*In re* CLARENCE W TEMPLE
AND FLORENCE A TEMPLE MARITAL TRUST

Docket No. 273911. Submitted February 5, 2008, at Lansing. Decided
February 28, 2008, at 9:00 a.m.

Wallace Temple filed a petition in the Clinton County Probate Court
to challenge an amendment of a trust to which he and his brothers,
Ralph and Dean Temple, are beneficiaries. The parties' parents
created the trust to distribute to the parties equal shares of the
family farm after the parents' deaths, but, after the mother died,
the father amended the trust to distribute one parcel to Ralph
Temple and one parcel to Dean Temple. Wallace Temple sought to
have the amendment declared invalid on the ground that the trust
instrument required both settlors to authorize any amendment
and, while that petition was pending, filed another petition re-
questing the imposition of a constructive trust on the basis of
fraud, misrepresentation, and undue influence. The court, Lisa
Sullivan, J., granted the respondents' motion for summary dispo-
sition with respect to the claims of fraud and misrepresentation,
denied the motion with respect to the claim of undue influence,
and ruled that the settlors intended the surviving settlor to have
the power to amend the trust. Wallace Temple appealed, and the
Court of Appeals reversed, ruling that the father's attempt to
amend the trust after the mother's death violated the express
terms of the trust. *In re Clarence W Temple and Florence A Temple
Marital Trust*, unpublished opinion per curiam of the Court of
Appeals, issued August 9, 2005 (Docket No. 261000). On remand,
the probate court denied Wallace Temple's request to partition the
land and ordered that the property be sold with the proceeds
divided equally. The probate court also ruled that, while Wallace
Temple was not entitled to attorney fees because his actions did
not benefit the estate and he did not prove that that his fees were
reasonable, the respondents were entitled to attorney fees for
defending an action as fiduciaries of the estate. Wallace Temple
appealed.

The Court of Appeals *held*:

1. The probate court did not abuse its discretion by approving
payment of respondents' attorney fees from trust assets, even

though the court relied on inapplicable caselaw and court rules in reaching its decision. Under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, trustees who act reasonably and prudently with respect to the trust may retain counsel to advise or assist them in the performance of their administrative duties, to defend a claim or proceeding in any jurisdiction, or to act for their own protection in the performance of their duties, and the probate court did not err in concluding that the respondents had met this standard. The fact that Ralph Temple was the successor trustee under the amendment that the Court of Appeals ruled was invalid did not make his retention of counsel inappropriate, particularly where both he and Dean Temple, the original trustee, retained the same law firm, did not advocate adverse positions, and did not bill for any services on an individual basis. Regardless of who had the burden of establishing the reasonableness of the fees, the probate court's ruling that the respondents' fees were reasonable was based on a thorough examination of the applicable factors and was within the range of reasonable and principled outcomes.

2. The probate court did not err by denying Wallace Temple attorney fees because he did not overcome the general rule that a litigant is responsible for his or her own attorney fees in the absence of an express statute, court rule, or judicial exception. The exception for cases in which the services performed were not only distinctly beneficial to the estate but became necessary by reason of laches, negligence, or fraud was not applicable to this case.

3. The petitioner had no statutory right to demand that the property be partitioned because he did not hold his interest in the property as a joint tenant or a tenant in common. Even if he had such a right, the probate court would not have erred in refusing to partition the property in light of the fact that the nature of the land made it difficult to divide into equal shares.

Affirmed.

PARTITION — RIGHT TO PARTITION — BENEFICIARIES.

The statutory right to demand partition of real property is limited to those who hold their interest in the property as joint tenants or as tenants in common and does not allow the beneficiary of a trust to bring a claim for partition against the trustee (MCL 600.3304; MCL 600.3324[1]).

*Silverman, Smith & Rice, P.C.* (by *Ruth A. Gregg* and *Stephen M. Rice*), for Wallace Temple.

Dean Temple and Ralph Temple *in propriis personis*.

Before: MARKEY, P.J., and METER and MURRAY, JJ.

PER CURIAM. Petitioner Wallace Temple appeals by right the order of the probate court denying his request for attorney fees, granting the request of respondents Ralph and Dean Temple for attorney fees, denying petitioner's request for partition, and ordering the sale of the main asset of the Clarence W. and Florence A. Temple Marital Trust, the family farm. We affirm.

### I. FACTUAL BACKGROUND

In an earlier appeal, this Court held that Clarence Temple's attempt after Florence Temple's death to amend the terms of the trust regarding distribution, and to nominate Ralph rather than Dean as the successor trustee on his death, violated the express terms of the original trust agreement. *In re Temple Marital Trust*, unpublished opinion per curiam of the Court of Appeals, issued August 9, 2005 (Docket No. 261000). We set forth additional background for this appeal from that decision:

> Petitioner and respondents are brothers and beneficiaries of a trust created by their parents, Clarence and Florence Temple ("the settlors"). The trust, as originally created in 1998, stated that two parcels of property that comprised the settlors' farm would be divided and distributed equally to petitioner, respondents, and a fourth brother (since deceased) after the settlors' deaths.
>
> *   *   *
>
> After Florence Temple died, Clarence Temple executed an amendment to the trust that distributed one parcel of the farm to respondent Dean Temple and the other to

respondent Ralph Temple. Respondents testified that they verbally assured Clarence that Ralph would divide his property with petitioner and that the trust amendment would enable petitioner to gain his share of the land without having to deal with respondent Dean Temple, with whom he had a longstanding feud. When Clarence died, Ralph attempted to work out a division of the property with petitioner, but they failed to reach an agreement.

Petitioner petitioned the probate court to construe the trust as not allowing Clarence to amend it after Florence's death. . . . The probate court found that the settlors intended for the surviving settlor to retain the power to amend, and the court thus construed the trust as allowing Clarence's amendment. [*Id.* at 1-2.]

This Court held that the trust language only provided for the trust to be amended by both settlors; consequently, Clarence was precluded from amending the trust after Florence died. The Court remanded the case to the probate court for further proceedings. *Id.* at 5.

After remand, petitioner filed a motion for attorney fees. Respondents countered with a motion for partition and authorization for sale. After mediation failed, respondents moved for approval of a final settlement of claims, permission to sell the trust property, and attorney fees to be paid by the trust.

The trial court held an evidentiary hearing, limiting the testimony to issues involving the distribution of trust assets and attorney fees. The parties stipulated an appraisal valuing the farm at $415,000. Each side argued that it was entitled to attorney fees but the other side was not. The evidence established that respondents had incurred $29,109.38 and petitioner had incurred $118,312.45 in attorney fees and $2,500 for the appraisal.

As for the distribution of the trust property, respondents argued that while they wanted to keep the farm in

the family pursuant to the terms of the trust, they did not think it was possible, so they asked the trial court to allow it to be sold with each beneficiary receiving 25 percent of the net profits. Dean testified that it would be difficult to partition the farm into four equal shares given the difference in value between tillable and untillable land. Ralph was unwilling to accept any ruling of the trial court that would give petitioner anything more than 25 percent.

Petitioner testified that he wanted the land partitioned. He requested that the trial court award him as much of the property west of the river as was necessary to give him property valued at $194,359.33. He acknowledged that this was more than 25 percent of the trust assets but asserted he was entitled to it on the basis of his attorney fees. Ignoring attorney fees, petitioner indicated that the property should be divided four ways, but he did not provide any proposal for how to accomplish a four-way division. Petitioner conceded that the appraisal was not necessarily the amount that could be realized from selling the property.

The trial court issued an opinion ruling that respondents were entitled to attorney fees for defending an action as fiduciaries of the estate and that those fees were properly chargeable to the estate because Ralph was successor trustee under the amendment and Dean was successor trustee under the original trust. The court also reasoned that claims of wrongdoing against respondents were dismissed and not appealed. Petitioner's request for attorney fees was denied because his actions did not benefit the estate. Petitioner also failed to prove that his attorney fees were reasonable. The trial court denied the petitioner's request for partition and ordered that the property be sold with the proceeds divided equally after payment of certain itemized expenses, reasoning as follows:

Although Petitioner requested partition, neither he nor any of the other Trust beneficiaries put forth any proposal which divided the Real Estate into four (4) equal parcels. Instead, Petitioner proposed that he receive a parcel with a value equal to 46.8% of the entire Real Estate,[4] and that the proposed parcel include 50% of the total river frontage, along with significant tillable acreage. Petitioner testified that he proposed this specific parcel for partition for its monetary value. Respondents both indicated that, if it were possible, they would like to see the Real Estate stay in the Temple Family. However, they oppose the partition of the property because they could not craft a "share and share alike" division which would satisfy all the beneficiaries. Moreover, the Trust has no other liquid assets, and there are claims pending against the Trust for attorney fees and costs incurred as a result of this litigation.

The parties agree that the Real Estate contains 140.65 net acres. It contains river frontage and both tillable and untillable land. While crop farming may be its highest and best use now, the appraisal acknowledged the potential for future residential development as well as the possibility for sand and gravel mining. Further, there is no agreement among the beneficiaries (and no evidence was offered) as to how the property could be acceptably divided in a "share and share alike" division. The only agreement among the parties is that the Real Estate is worth approximately $415,000.00.

Therefore, it is the decision of this Court that the property shall be listed and sold by a licensed realtor, selected by this Court, and that the proceeds from the sale shall be divided as provided in the opinion below.

---

[4] This value assumes an offset for his attorney fees, in the amount of $120,812.45, and then 25% of the net remaining value of the Real Estate.

---

## II. STANDARD OF REVIEW

The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, governs this case because, al-

though the trust was created in 1998, these proceedings were commenced after EPIC's effective date of April 1, 2000, and no accrued rights will be impaired by its application. MCL 700.8101; *In re Duane V Baldwin Trust*, 274 Mich App 387, 391 n 2; 733 NW2d 419 (2007), mod 480 Mich 915 (2007). Issues of statutory construction present questions of law that this Court reviews de novo. *Id.* at 396. But appeals from a probate court decision are on the record, not de novo. See MCL 700.1305; MCL 600.866(1); MCR 5.802(B)(1); *In re Webb H Coe Marital and Residuary Trusts*, 233 Mich App 525, 531; 593 NW2d 190 (1999). The trial court's factual findings are reviewed for clear error, while the court's dispositional rulings are reviewed for an abuse of discretion. *In re Coe Trusts, supra*; *In re Baldwin Trust, supra* at 396-397. The trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *In re Baldwin Trust, supra* at 397, citing *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Likewise, with respect to an award of attorney fees, we review underlying findings of fact for clear error, *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 381-382; 652 NW2d 474 (2002), while questions of law are reviewed de novo, *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 438; 695 NW2d 84 (2005). But we review the court's decision whether to award attorney fees and the determination of the reasonableness of the fees for an abuse of discretion. *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 682; 713 NW2d 814 (2006). The court does not abuse its discretion when its decision is within the range of reasonable and principled outcomes. *Patrick v Shaw*, 275 Mich App 201, 204; 739 NW2d 365 (2007), mod 480 Mich 1050 (2008).

### III. ANALYSIS

#### A. RESPONDENTS' ATTORNEY FEES

Petitioner argues that respondents were not entitled to attorney fees because their positions in the litigation advocated their personal interests rather than any fiduciary interest and respondents did not act to preserve trust assets. Further, petitioner argues that this Court's prior opinion determined that Ralph was never a trustee; therefore, Ralph never acted as a fiduciary. The award of attorney fees to Dean, the rightful trustee, is erroneous because the trial court failed to address how attorney services were necessary and benefited the estate. We conclude that the trial court did not abuse its discretion by approving payment of respondents' attorney fees from trust assets because the court's decision was reasonable and principled even though the court relied on inapposite caselaw and an inapplicable court rule. *Patrick, supra* at 204.

The general rule in Michigan is that absent authorization by statute, court rule, or contract, attorney fees are not recoverable. *Dessart v Burak*, 470 Mich 37, 42; 678 NW2d 615 (2004). In this case, the trial court awarded attorney fees to respondents on the basis of statutes, court rules, and caselaw regarding personal representatives. For example, the trial court cites MCR 5.313(A) for the proposition that "attorney fees are allowable for necessary legal services performed on behalf of an estate or its fiduciary." But MCR 5.313(A) only permits attorney fees to a personal representative and makes no reference to other fiduciaries. In fact, the comments to MCR 5.313 specifically exclude other fiduciaries, stating that the rule was "amended to limit its applicability to attorneys representing personal representatives" and reflects changes in terminology and

practice caused by the adoption of EPIC. Also, MCR 5.313 is located in Subchapter 5.300, which governs proceedings in decedents' estates, but it is Subchapter 5.500 that governs trusts. See MCR 5.501(A); MCL 700.1107(m) (excluding "personal representative" from the definition of "trust"). Indeed, MCR 5.501(B) states the general rule that trusts are administered without judicial supervision absent a petition for review. See MCR 5.501(C); MCL 700.7201(2).[1]

Likewise, the caselaw the trial court cites and on which respondent relies relates to decedents' estates and personal representatives. Both the trial court and petitioner cite *In re Prichard Estate*, 164 Mich App 82, 86; 416 NW2d 331 (1987), and *In re Brack Estate*, 121 Mich App 585, 591; 329 NW2d 432 (1982), for the proposition that "attorney's fees could be charged against an estate only where the services rendered were on behalf of and beneficial to the estate." *In re Brack Estate, supra.* Both of these cases involve a decedent's estate. They also interpret and apply repealed provisions of the former Revised Probate Code providing that without a court order, " 'a fiduciary of an estate may employ counsel to perform necessary legal services in behalf of the estate and the counsel shall receive reasonable compensation for the legal services.' " *In re*

---

[1] MCL 700.7201(2) provides:

Neither registration of a trust nor another proceeding concerning a trust results in continuing supervisory proceedings. Subject to court jurisdiction as invoked by an interested person or as otherwise exercised as provided by law, the management and distribution of a trust estate, submission of an account or report to beneficiaries, payment of a trustee's fees and other trust obligations, acceptance and change of trusteeship, and any other aspect of trust administration shall proceed expeditiously consistent with the terms of the trust, free of judicial intervention, and without court order or approval, or other court action.

*Prichard Estate, supra* at 86, quoting MCL 700.543. This statute was repealed by EPIC, which applies to these proceedings. MCL 700.8101. Respondents were acting in their capacity as putative successor trustees of a trust, not as personal representatives of a decedent's estate.

Trust administration is governed by Article VII of EPIC, MCL 700.7101 *et seq*. Under EPIC, the general rule is that trusts are administered without judicial supervision. MCL 700.7201(2). Specific powers of trustees are stated in MCL 700.7401, which provides in part:

> (1) A trustee has the power to perform in a reasonable and prudent manner every act that a reasonable and prudent person would perform incident to the collection, preservation, management, use, and distribution of the trust property to accomplish the desired result of administering the trust legally and in the trust beneficiaries' best interest.
>
> (2) Subject to the standards described in subsection (1) and except as otherwise provided in the trust instrument, a trustee possesses all of the following specific powers:
>
> &#42;  &#42;  &#42;
>
> (v) To employ, and pay reasonable compensation for services performed by, a person, including an auditor, investment advisor, accountant, appraiser, broker, custodian, rental agent, realtor, or agent, even if the person is associated with the trustee, for the purpose of advising or assisting the trustee in the performance of an administrative duty; to act without independent investigation upon such a person's recommendation; and, instead of acting personally, to employ 1 or more agents to perform an act of administration, whether or not discretionary.
>
> (w) To employ an attorney to perform necessary legal services or to advise or assist the trustee in the performance of the trustee's administrative duties, even if the attorney is associated with the trustee, and to act without

independent investigation upon the attorney's recommendation. An attorney employed under this subdivision shall receive reasonable compensation for his or her employment.

(x) To prosecute, defend, arbitrate, settle, release, compromise, or agree to indemnify a claim or proceeding in any jurisdiction or under an alternative dispute resolution procedure. The trustee may act under this subsection for the trustee's protection in the performance of the trustee's duties.

Thus, provided a trustee acts as a reasonable and prudent person with respect to the trust, a trustee may retain counsel "to advise or assist the trustee in the performance of the trustee's administrative duties," § 7401(w), and to defend a claim or proceeding in any jurisdiction, § 7401(x). This includes authorizing the trustee to act "for the trustee's protection in the performance of the trustee's duties." § 7401(x). Furthermore, a trustee may "act without independent investigation upon the attorney's recommendation." § 7401(w). Pertinent to this case, a trustee is not charged with prescient knowledge of which of two conflicting trust provisions a court may subsequently affirm or reject.

Similarly, the trust instrument in this case supplements the trustee's authority to contract on behalf of the trust for the services of an attorney:

In the administration of this TRUST, the Trustee shall have the following powers, which powers are not in limitation of, but are in addition to, any others which are granted by law:

* * *

(J) To employ brokers, banks, custodians, investment counsel, attorneys, certified public accountants and other

agents, and to delegate to them such duties, rights and powers of the Trustee for such periods and purposes as the Trustee deems advisable;

(K) To execute contracts, conveyances and other instruments, including instruments containing covenants and warranties binding upon and creating a charge against the TRUST property . . . .

Petitioner initiated this litigation to have the probate court declare Clarence's attempted trust amendment invalid and also alleged that the respondents engaged in wrongdoing through misrepresentation and undue influence. The outcome of the litigation regarding the construction of trust language to determine whether the amendment was valid would determine not only the proper successor trustee (either Ralph or Dean), but also the terms of distribution. Respondents defended the amendment and other allegations on advice of counsel. The issues and result of the litigation directly affected the trustee's administrative duties because the validity of the amendment determined the proper trust beneficiaries and asset distribution. Distribution of trust property to the proper beneficiary is a primary administrative duty of a trustee. MCL 700.7401(1), (2)(hh). Thus, respondents acted as reasonable and prudent persons, on the advice of counsel, to protect their role as trustees, to ascertain which of them was the proper successor trustee, and to determine the proper distribution of the trust assets. MCL 700.7401(2)(v) and (w) authorized respondents, acting as trustees, to retain counsel to perform necessary legal services to advise and assist the putative trustees in determining how the trust should be distributed, and also entitled counsel so retained to compensation for those services. Similarly, the trust itself empowered the successor trustee to retain counsel as the trustee deemed advisable, and such contract for legal services is

a charge against the trust property. Accordingly, it was proper for the trial court to award respondents' attorney fees as a charge against the trust assets for services rendered to respondents acting in their capacity as trustees.

EPIC permits any interested party to petition the probate court to "review the propriety of employment of a person by a trustee including an attorney . . . ." MCL 700.7205. Petitioner's primary challenge to respondent's retaining counsel to defend his challenge to the trust amendment is based on this Court's prior opinion holding the amendment invalid. But MCL 700.7201(2)(w) specifically authorizes a trustee to retain counsel and to act on advice so received, provided the trustee does so in a reasonable and prudent manner. Here, the trial court determined that respondents acted reasonably and prudently on advice given by counsel; consequently, they are not subject to surcharge simply because the litigation ended unfavorably to respondents' initial position. Similarly, the trust instrument authorized the successor trustee to employ counsel as the trustee deemed advisable, and such contract for legal services would be a charge against the trust assets. Clearly, either Ralph or Dean was the true successor trustee empowered to employ counsel to assist in determining the true trustee and the proper distribution of trust assets.

Nevertheless, petitioner argues that because this Court held the amendment to the trust invalid, attorney fees for services rendered to Ralph were not a charge against trust assets because Ralph was not actually a successor trustee. Under the original trust, Dean was the successor trustee. Under the amendment to the trust, Ralph was the successor trustee. Given that each respondent was potentially the successor

trustee of the trust in question, it was appropriate for both respondents to have counsel. That way, regardless of the outcome regarding the validity of the trust amendment, the true successor trustee was represented. From the inception of this litigation, the same law firm represented both respondents and the trust. The record does not indicate that respondents advocated adverse positions. Indeed, both respondents initially defended the amended trust and then sought to complete the administration of the trust according to the original trust after this Court held that the amendment was invalid. The billing records from respondents' counsel do not indicate any legal services provided for respondents individually (as opposed to jointly). Thus, the trial court's decision approving payment of respondents' legal fees from trust assets was reasonable and principled and, therefore, not an abuse of discretion.

The trial court also approved payment from trust assets of respondents' legal expenses defending petitioner's allegations of misconduct by the trustees. The court ruled, quoting *In re Hammond Estate*, 215 Mich App 379, 387; 547 NW2d 36 (1996), that "when attorney fees are incurred in defending an action, challenging the fiduciary's performance of duties, such fees 'are properly chargeable against the estate where no wrongdoing is proved.' " Although *In re Hammond Estate* involved a petition to remove the personal representative, we conclude that the principle for which the trial court cited *Hammond* is equally applicable to trustees under the statutory framework of EPIC and to caselaw applying prior statutes governing trusts. See *In re Gerber Trust*, 117 Mich App 1, 15-17; 323 NW2d 567 (1982) (applying MCL 700.826[e] and [f] which were repealed by EPIC but which governed trustees and contained language similar to EPIC).

As already noted, MCL 700.7401(2)(x) authorizes a trustee to defend "a claim or proceeding in any jurisdiction" and to act "for the trustee's protection in the performance of the trustee's duties." MCL 700.7401(2)(w) authorizes a trustee to "employ an attorney to perform necessary legal services or to advise or assist the trustee in the performance of the trustee's administrative duties" and that an attorney so employed "shall receive reasonable compensation for his or her employment." In *Gerber*, a beneficiary filed a petition to remove a trustee, alleging that the trustee had violated federal securities laws. The trustee successfully defended this challenge. One issue on appeal was whether the trustee's legal fees were allowable as expenses of the trustee in administering the trust under then-existing MCL 700.826(e) and (f). The Court noted that these statutes provided "that a trustee may defend actions, claims or proceedings for the protection of the trustee in the performance of his duties" and "that a trustee may employ attorneys to assist the trustee in the performance of his administrative duties." *In re Gerber Trust, supra* at 15. The Court held that the "trustee employed attorneys to defend its actions as trustee. In this sense, the legal services in question were performed on behalf of the estate, and the trustee incurred the legal fees in its administration of the estate." *Id.*

Likewise, here, respondents acted to defend their roles as trustee and potential trustee from charges of wrongdoing and to permit the true trustee to administer the terms of the trust by ascertaining and complying with the lawful terms of distribution. Respondents' employment of counsel under these circumstances was authorized by MCL 700.7401(2)(w) and (x) and by the trust instrument. Because there was no proof that respondents did anything improper, the trial court did

not abuse its discretion by determining that respondents' employing counsel to defend against such charges was within the bounds of propriety. MCL 700.7205.

Petitioner also argues that the trial court erred in approving payment of respondents' attorney fees from trust assets because respondents provided no evidence to demonstrate the reasonableness of their legal fees other than their counsel's itemized statements. We disagree. MCL 700.7205 provides that on petition of an interested person, after notice to all interested persons, the probate court may review the propriety of the employment of an attorney by a trustee and may review the reasonableness of compensation of a person so employed. See *In re Adams Estate*, 257 Mich App 230, 235; 667 NW2d 904 (2003). Under prior law, the burden rested on the trustee to prove the reasonableness of both its fees and the fees of counsel. See *In re Eddy Estate*, 354 Mich 334, 348; 92 NW2d 458 (1958) (trustee, in filing its account with the court, had the burden of proving its claim for legal fees). This is consistent with caselaw placing the burden of establishing reasonableness of attorney fees on the party claiming them when the attorney fees are sought as the costs of litigation or as an element of damages. See *Windemere Commons, supra* at 683; *Solution Source, supra* at 382.

But MCL 700.7205 is silent regarding how to allocate the burden of proof on a petition for review filed by an interested person. Further, respondents' legal fees are a matter of contract as authorized by the trust instrument and statutory provisions discussed above. Absent a petition for review by an interested party, MCL 700.7201(2) places the administration of the trust, including "payment of a trustee's fees and other trust

obligations," in the hands of the trustee without judicial intervention or approval. The commentary to § 7-205 of the Uniform Probate Code, which is worded nearly identically to MCL 700.7205, states:

> In view of the broad jurisdiction conferred on the probate court, description of the special proceeding authorized by this section might be unnecessary. *But the Code's theory that trustees may fix their own fees and those of their attorneys marks an important departure from much existing practice under which fees are determined by the Court in the first instance.* Hence, it seems wise to emphasize that any interested person can get judicial review of fees if he desires it. Also, if excessive fees have been paid, this section provides a quick and efficient remedy. This review would meet in part the criticism of the broad powers given in the Uniform Trustees' Powers Act. [Emphasis added.]

Regardless of which party bears the burden of proof to establish reasonableness, there exists no precise formula by which a court may assess the reasonableness of an attorney fee. Rather, a court must consider multiple factors, including: (1) the skill, time and labor involved; (2) the likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the lawyer; (3) the fee customarily charged in that locality for similar services; (4) the amount in question and the results achieved; (5) the expense incurred; (6) the time limitation imposed by the client or the circumstances; (7) the nature and length of the professional relationship with the client; (8) the professional standing and experience of the attorney; and (9) whether the fee is fixed or contingent. See *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 114; 593 NW2d 595 (1999), and *In re Condemnation of Private Prop for Highway Purposes*, 209 Mich App 336, 340-342; 530 NW2d 183 (1995).

Here, our review of the record indicates that the trial court thoroughly examined the factors required to determine a fee's reasonableness, and the record supports the court's findings. Consequently, the trial court's findings were not clearly erroneous, and the court's ruling that respondents' attorney fees were reasonable was within the range of reasonable and principled outcomes. *Patrick, supra* at 204. Moreover, petitioner fails to cite any authority to support his position that the trial court should have been presented additional evidence. An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims. *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 650; 662 NW2d 424 (2003). This failure constitutes abandonment of the issue. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

### B. PETITIONER'S ATTORNEY FEES

Petitioner argues that the trial court erred by denying his request for attorney fees because he successfully litigated the validity of the trust amendment, resulting in respondents' having to comply with the terms of the original trust. Petitioner claims that the litigation benefited the estate by enforcing the settlors' original intent. We disagree.

To win his argument for attorney fees, petitioner must overcome the general rule in Michigan, i.e., the "American rule" under which a litigant is responsible for his or her own attorney's fees in the absence of an express statute, court rule, or judicial exception. *Dessart, supra* at 42; *In re Sloan Estate*, 212 Mich App 357, 361; 538 NW2d 47 (1995). Petitioner must provide a meritorious argument that an exception to the American rule applies in this case. *Radenbaugh v Farm*

*Bureau Gen Ins Co of Michigan*, 240 Mich App 134, 152; 610 NW2d 272 (2000). In general, an award of attorney fees to petitioner may not be based solely on equitable principles. *In re Adams Estate, supra* at 237.

Petitioner relies on the judicial exception to the American rule adopted by our Supreme Court in *Becht v Miller*, 279 Mich 629, 273 NW 294 (1937). In *Becht*, a beneficiary under a will hired an attorney whose actions caused the executrix to add certain bonds to the estate that had previously been excluded. After observing that attorney fees are generally a matter of contract, the payment of which is the responsibility of the party that retained counsel, the Court noted the "equitable principle that where one, among others, interested in a particular fund, employs an attorney by whose service the fund is enhanced, preserved, or protected, the others entitled to claim in the fund, and so benefited, should share the expenses of such services." *Id.* at 637. The Court affirmed the trial court's award of payment of the attorney's fee from the estate, concluding that the attorney's services had benefited the estate by restoring to the estate funds that the executrix had wrongfully withheld. *Id.* at 639-640. The Court limited the application of this exception in stating its reasoning. The *Becht* Court opined:

> Thus the case at bar presents the question of the allowance from an estate as administrative expenses of fees and expenses incurred not by the executor or administrator but by a residuary legatee. . . . [A]s a general proposition it may be stated that before such an item may be charged against the estate *it must be shown that the services rendered were beneficial to the estate as a whole rather than to an individual or group of individuals interested therein*. . . .
>
> A doctrine which permits a decedent's estate to be so charged, should, however, in our opinion, be applied with

caution and its operation *limited to those cases in which the services performed have not only been distinctly beneficial to the estate, but became necessary either by reason of laches, negligence or fraud of the legal representative of the estate.* [*Id.* at 638 (emphasis added).]

In the present case, petitioner did not prove that respondents had necessitated the representation because of laches, negligence, or fraud. Rather, petitioner successfully litigated a question of trust construction. Moreover, the litigation did not preserve or enhance the value of the estate. Instead, the litigation was initiated to benefit petitioner's own interest as a beneficiary and not that of the estate as a whole. In fact, the litigation rendered the settlors' desire to keep the farm in the family unattainable. Under these circumstances, *Becht* and its progeny do not provide an exception to the application of the American rule to petitioner's legal fees. *Radenbaugh, supra* at 152. Because petitioner has not established that the trial court erred in denying his request for attorney fees, we need not address the issue whether the amount of fees requested was reasonable.

### C. PARTITION

Petitioner last argues that the trial court erred by denying his request for partition without evidence or a finding that partition would cause great prejudice. Moreover, petitioner argues that partition would further the settlors' intent by keeping the farm in the family. We disagree with the premise of petitioner's argument; petitioner did not have a right to partition. Furthermore, the trial court did not abuse its discretion in denying his request.

An action to partition land is equitable in nature. MCL 600.3301; *Henkel v Henkel*, 282 Mich 473, 478; 276 NW 522 (1937). Although our Supreme Court has

said that equitable actions are reviewed de novo with the trial court's findings of fact reviewed for clear error, *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005), appeals from a probate court decision under EPIC are not reviewed de novo but on the record. See MCL 700.1305;[2] MCL 600.866(1);[3] MCR 5.802(B)(1).[4] Moreover, "[i]n an equitable action, a trial court looks at the entire matter and grants or denies relief as dictated by good conscience." *In re Moukalled Estate*, 269 Mich App 708, 719; 714 NW2d 400 (2006). " 'Broadly speaking the sound discretion of the court is the controlling guide of judicial action in every phase of a suit in equity.' " *Van Etten v Manufacturers Nat'l Bank of Detroit*, 119 Mich App 277, 286; 326 NW2d 479 (1982), quoting *Youngs v West*, 317 Mich 538, 545; 27 NW2d 88 (1947) (internal quotation and citation omitted).

In arguing that the trial court abused its discretion in denying his request for partition, petitioner places great weight on *Henkel*, *supra* at 480, which holds that the statutory right of partition is mandatory. Petitioner's reliance on *Henkel* is misplaced. The *Henkel* Court interpreted 1929 CL 14995, which provided that " 'all persons holding lands as joint tenants or tenants in

---

[2] MCL 700.1305 provides: "Appellate review, including the right to appellate review or interlocutory appeal and provisions as to time, manner, notice, appeal bond, stays, scope of review, record on appeal, briefs, arguments, and the power of the appellate court, is governed by the revised judicature act of 1961 and by supreme court rule."

[3] MCL 600.866(1) provides: "All appeals from the probate court shall be on a written transcript of the record made in the probate court or on a record settled and agreed to by the parties and approved by the court. An appeal shall not be tried de novo."

[4] MCR 5.802(B)(1) provides: "An appeal from the probate court is on the papers filed and a written transcript of the proceedings in the probate court or on a record settled and agreed to by the parties and approved by the court. The appeal is not de novo."

common, may have partition thereof, in the manner provided in this chapter.' " *Henkel, supra* at 480 (emphasis omitted). Then, as now, the statutory right of partition was limited to joint tenants and tenants in common. MCL 600.3304.[5] Here, petitioner was not a joint tenant or tenant in common with respect to the real property held by the trust but only held a beneficial interest in the trust corpus. Two years after *Henkel*, the Court in *Fox v Greene*, 289 Mich 179, 185; 286 NW 203 (1939), held that a beneficial interest in trust property did not give rise to the right of partition under § 14995 because the beneficial interest was not an estate in possession.

The *Fox* Court construed § 14995 in conjunction with 1929 CL 15074, which extended the statutory right of partition " 'to lands held by a trustee for the benefit of parties having a beneficial interest therein, and the proceedings for a partition may be instituted by the trustee, or any party interested in the lands so held . . . .' " *Fox, supra* at 183. The statutes at issue in *Fox* are almost identical to MCL 600.3304 and MCL 600.3324(1), the latter of which provides: "The provisions concerning partition are applicable to lands held by a trustee for the benefit of others, and a claim for partition may be instituted by the trustees or any person interested in the lands held in trust." Reading § 14995 and § 15074 together, the *Fox* Court held the two statutes "do not confer any right upon the part of the beneficiary of a trust to maintain partition as against the trustee." *Fox, supra* at 184. Rather, the Court held that when a trustee holds property as a joint tenant or tenant in common with another, the trustee

---

[5] MCL 600.3304 provides: "All persons holding lands as joint tenants or as tenants in common may have those lands partitioned."

or any person beneficially interested in the trust may institute proceedings for partition. *Id.*

Although *Fox* appears to be dispositive of petitioner's claim for partition, we briefly review whether the trial court clearly erred in its findings or abused its discretion in denying petitioner's request for partition. We note that EPIC vests the probate court with the jurisdiction to hear an equitable claim for partition. MCL 700.1303(1)(b); see, also, *Van Etten, supra* at 287 (observing that MCL 700.22 extended equitable jurisdiction to the probate court in limited instances, including granting the relief of partitioning property). In an action for partition, the court determines "whether the premises can be partitioned without great prejudice to the parties," the property's value and use, and any other matters the court finds pertinent. MCR 3.401(A).

Here, none of the parties suggested a viable method to partition the property into the four equal parcels required to comply with the trust's terms of distribution. As indicated by the appraisal, a straight division of the property into an equal number of acres does not result in equal shares because the land consists of riverfront, tillable, and untillable property, all with differing values and desirability. Given that the property is unevenly bisected by a river, the difference in the value of tillable and untillable land, the fact that the current best use was farming even though some of the land is untillable, and the fact that future use could include residential development or sand and gravel mining, the trial court determined that there appeared to be no reasonable way to divide the land into four equal parcels as the trust requires. We find no clear error in this determination. See *Burns v Ambler*, 302 Mich 526, 528-529; 5 NW2d 451 (1942) (holding that sale was appropriate where dividing the property

among six parties was difficult because the nature of the land made it impossible to divide it into six equal parcels and the land likely had more value sold as a whole); *Fortney v Tope*, 262 Mich 593, 600; 247 NW 751 (1933) (recognizing that a "metes and bounds" partition when land contains oil and gas results in a serious loss to a coowner who receives a lot without oil or gas under the surface, with the loss due solely to the division of the land). The concerns discussed in these cases apply to the issue of partition here: There are various types of land with different values, some of which include future mining use or residential development. "Although partition in kind is favored, the court may also order sale and division of the proceeds when it concludes that an equitable physical division cannot be achieved." *Albro v Allen*, 434 Mich 271, 284; 454 NW2d 85 (1990). Consequently, even if petitioner's request for partition were properly before the probate court, the court did not clearly err in its findings of fact or abuse its discretion by denying petitioner's request for partition.

We affirm.