# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF RICHARD L. LUJAN.

---

JOSEPH M. XUEREB, Personal Representative,
AUTUMN LUJAN, and NICHOLAS LUJAN,

      Appellees,

v

PROBATE ASSET RECOVERY, LLC,

      Appellant.

UNPUBLISHED
March 13, 2018

No. 335581
Wayne Probate Court
LC No. 2015-813429-DA

---

*In re* ESTATE OF ANNELIESE GULICK.

---

JOSEPH M. XUEREB, Personal Representative,

      Appellee,

v

PROBATE ASSET RECOVERY, LLC,

      Appellant.

No. 335594
Wayne Probate Court
LC No. 2015-812492-DE

---

Before: M. J. KELLY, P.J., and JANSEN and METER, JJ.

PER CURIAM.

In Docket No. 335581, appellant, Probate Asset Recovery, LLC (PAR), appeals as of right an order granting in part a petition by appellee, Joseph M. Xuereb, Personal Representative of the Estate of Richard L. Lujan, to have the estate pay asset-recovery fees to PAR. In Docket No. 335594, appellant, again PAR, appeals as of right an order granting in part a petition by appellee, Xuereb, Personal Representative of the Estate of Anneliese Gulick, to have that estate pay asset-recovery fees to PAR. The appeals were consolidated. *In re Lujan Estate*, unpublished

-1-

order of the Court of Appeals, entered January 11, 2017 (Docket Nos. 335581 and 335594). We affirm in both appeals.

These cases involve the efforts of PAR to recover a one-third contingency fee on the net proceeds from the sale of property of the respective estates in these cases, in accordance with agreements between PAR and Xuereb, a Wayne County public administrator who is the personal representative of each of the estates involved in these cases.[1] In each case, Xuereb petitioned the probate court to award a one-third asset-recovery fee to PAR, and the probate court refused to award such a contingency fee to PAR and instead awarded PAR a fee based on its time expended in providing services to the respective estates.[2]

In both of these appeals, PAR argues that the probate court erred in deciding to award compensation to PAR on the basis of an hourly rate rather than awarding a contingency fee and that the hourly rate used by the probate court was unreasonably low. We disagree.

"Issues of statutory construction present questions of law that this Court reviews de novo." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). Unambiguous statutory language is enforced as written. *Parks v Parks*, 304 Mich App 232, 238; 850 NW2d 595 (2014). The probate court's determination of reasonable compensation is reviewed for an abuse of discretion. *In re Krueger Estate*, 176 Mich App 241, 251-252; 438 NW2d 898 (1989).[3] An abuse of discretion occurs when the probate court's decision falls outside the range of reasonable and principled outcomes. *Temple*, 278 Mich App at 128. This Court reviews underlying findings of fact for clear error, while questions of law are reviewed de novo. *Id*.[4] Clear error exists if this Court is definitely and firmly convinced that the trial court made a mistake. *Parks*, 304 Mich App at 237.

MCL 700.3715 provides, in relevant part:

---

[1] PAR locates properties on the cusp of foreclosure whose owners have died; it describes itself as working "with county public administrators to assist them in timely initiating probate, protecting the six-month redemption period and supervising the timely marketing of these estate assets in order to obtain distributable assets for estate beneficiaries and to avoid total loss of the assets through foreclosure."

[2] The requested fee in the Lujan case was reduced from the amount originally requested, but the original amount was calculated on the basis of a one-third contingency fee.

[3] *Krueger* addressed the issue of reasonable compensation to the personal representative, see *Krueger*, 176 Mich App at 251, but the reasoning is applicable by analogy to the determination of reasonable compensation in the present context.

[4] The issue in *Temple* concerned the award of attorney fees to fiduciaries, see *Temple*, 278 Mich App at 126, but again, the reasoning is applicable by analogy to an award of fees to a contractor engaged by the personal representative.

[A] personal representative, acting reasonably for the benefit of interested persons, may properly do any of the following:

* * *

(v) Employ, and pay reasonable compensation for reasonably necessary services performed by, a person, including, but not limited to, an auditor, investment advisor, or agent, even if the person is associated with the personal representative, to advise or assist the personal representative in the performance of administrative duties; act on such a person's recommendations without independent investigation; and, instead of acting personally, employ 1 or more agents to perform an act of administration, whether or not discretionary.

This statutory language thus authorizes a personal representative to employ, and pay reasonable compensation for reasonably necessary services performed by, a person to advise or assist the personal representative in performing administrative duties. This power of the personal representative is, however, subject to the probate court's authority to review the reasonableness of compensation to be paid to a person employed by the personal representative. In particular, MCL 700.3721 states, in relevant part:

After notice to all interested persons, on petition of an interested person, on appropriate motion if administration is supervised, or on the court's own motion, the court may review the propriety of employment of a person by a personal representative, including, but not limited to, an attorney, accountant, investment advisor, or other specialized agent or assistant, the reasonableness of such a person's compensation, or the reasonableness of the compensation determined by the personal representative for the personal representative's own services.

Like the probate court and PAR, we have located no caselaw addressing the method of determining the reasonableness of compensation paid to such agents of the personal representative. As the probate court noted, however, there are analogous statutory provisions concerning compensation for services rendered by an attorney, MCL 700.3715(w),[5] and a

---

[5] MCL 700.3715(w) authorizes a personal representative to

[e]mploy an attorney to perform necessary legal services or to advise or assist the personal representative in the performance of the personal representative's administrative duties, even if the attorney is associated with the personal representative, and act without independent investigation upon the attorney's recommendation. An attorney employed under this subdivision shall receive reasonable compensation for his or her employment.

personal representative, MCL 700.3719(1).[6] Caselaw addressing compensation awarded either to an attorney or to a personal representative offer useful guidance in this analogous context.

This Court has noted:

> The determination of reasonable compensation to the personal representative is, in general, the same as for the attorney. The burden of proof is on the personal representative. The amount of time actually spent on estate administration is a factor in determining reasonable compensation. The personal representative's failure to present records concerning his services is usually weighed against him. The court's determination will be reversed only for an abuse of discretion. [*Krueger*, 176 Mich App at 251-252 (citations omitted).]

In the attorney-fee context, this Court has noted that no precise fee schedule or formula exists for determining the reasonableness of a fee. See *Temple*, 278 Mich App at 138. By analogy, there is no precise fee schedule or formula for calculating the amount of compensation to be paid to a personal representative or the personal representative's agents. The probate court possesses "the broadest discretion to evaluate the worth of the services rendered in light of its experience and knowledge of such matters." *In re Thacker Estate*, 137 Mich App 253, 258; 358 NW2d 342 (1984). "As always, the burden of proof is on the claimant to satisfy the court that services rendered were necessary and that charges therefor are reasonable." *Comerica Bank v City of Adrian*, 179 Mich App 712, 724; 446 NW2d 553 (1989).

In *Krueger* and *Comerica Bank*, in contexts analogous to the present case, this Court listed overlapping and nonexhaustive factors that a probate court may consider in its discretionary determination of what constitutes reasonable compensation. In *Krueger*, 176 Mich App at 248, this Court noted, with regard to an award of attorney fees: "In making its determination, the court should consider, among other factors, the amount of time spent, the amount of money involved, the character of the services rendered, the skill and experience necessary, and the results obtained." In *Comerica Bank*, 179 Mich App at 724, this Court listed the following factors to use in determining the reasonableness of a fiduciary's fee:

> (1) the size of the trust, (2) the responsibility involved, (3) the character of the work involved, (4) the results achieved, (5) the knowledge, skill, and judgment required and used, (6) the time and the services required, (7) the manner and promptness in performing its duties and responsibilities, (8) any unusual skill or experience of the trustee, (9) the fidelity or disloyalty of the trustee, (10) the amount of risk, (11) the custom in the community for allowances, and (12) any estimate of the trustee of the value of his services. The weight to be given any factor and the determination of reasonable compensation is within the probate court's discretion.

---

[6] MCL 700.3719(1) provides, in relevant part: "A personal representative is entitled to reasonable compensation for services performed."

The *Krueger* factors overlap the factors set forth in *Comerica Bank*, and neither list of factors was stated to be exclusive.

As noted, in the present cases, PAR challenges the probate court's refusal to award a contingent asset-recovery fee to PAR as an agent of Xuereb, the personal representative of these estates. PAR cites no authority permitting the award of a contingency fee to a contractor that a personal representative has engaged as a nonattorney agent pursuant to MCL 700.3715(v). Although Xuereb as personal representative agreed to pay PAR a contingency fee, the probate court is expressly authorized under MCL 700.3721 to review the reasonableness of compensation paid to a personal representative's agent or assistant. In these cases, the probate court determined that a contingency fee was unreasonable. The probate court noted that MCR 8.121 allows an attorney to enter into contingency-fee agreements for claims or actions for personal injury, wrongful death, or no-fault benefits, and concluded that this exception was inapplicable to PAR. Although PAR claims that the probate court misunderstood PAR's reason for citing MCR 8.121, the fact remains that this provision offers no support for PAR's claim for a contingency fee. The probate court also stated that PAR faces minimal risk of nonrecovery, given that PAR's practice is to not contact the public administrator until after determining that there is equity in a decedent's property and that more than 42 days have passed since the decedent's death without anyone commencing a probate proceeding. PAR argues that it faces risks of nonrecovery because there may be physical defects in the decedent's house, it may be impossible to make repairs before the foreclosure-redemption period expires, and an heir could seek to become personal representative in lieu of the public administrator. Even assuming some risks exist, however, PAR fails to establish that these risks required the award of a contingency fee in the present cases such that the probate court's decision to award PAR compensation based on an hourly rate was unreasonable. The probate court reasonably referred to the way in which PAR minimizes its risks. Many of PAR's arguments are directed toward explaining its overall business model of seeking a contingency fee in order to justify its expenditures on smaller estates; PAR says that it must be allowed to recover a contingency fee in order to turn a profit. As the probate court aptly noted, however, PAR has offered no support or justification for why its overall business risks and expenses should be levied against the estates in these cases. PAR's generalized arguments regarding its business model do not establish that the probate court's declination to award a contingency fee in the instant cases constitutes an abuse of discretion.

PAR's reliance on *Hartman v Associated Truck Lines*, 178 Mich App 426; 444 NW2d 159 (1989), is misplaced. In *Hartman*, 178 Mich App at 431, this Court held, in the context of a request for attorney fees in a no-fault automobile case, that

> the rigid hourly formula adopted by the trial court to compute the attorney fee that defendant is responsible for was unreasonable under the circumstances of this case. To the extent reasonable, we hold that a contingent fee arrangement is a significant part of the attorney-client relationship which must be considered in arriving at a reasonable attorney fee. Although the controlling criterion remains one of reasonableness, there is no precise formula for computing reasonableness and we reject the application of any rigid formula, whether based on a contingent fee arrangement or an hourly formula, that fails to take into account the totality of the special circumstances applicable to the case at hand.

-5-

The holding in *Hartman* requiring consideration of a contingency-fee arrangement in awarding attorney fees in a no-fault case fails to establish that the declination to award a contingency fee to a nonattorney agent of a personal representative amounts to an abuse of discretion. Again, PAR has identified no authority authorizing a contingency fee in this context, and even if a contingency fee is permissible, PAR has not demonstrated that the award of compensation based on an hourly rate in lieu of a contingency fee fell outside the range of reasonable and principled outcomes.

PAR argues that the probate court erred in relying on MRPC 5.4, which prohibits lawyers and law firms from sharing legal fees with a nonlawyer, with certain exceptions. We are inclined to agree with PAR that MRPC 5.4 is inapplicable, given that awarding reasonable compensation to PAR for its nonlegal services in identifying and recovering assets does not appear to constitute the sharing of a legal fee. However, we are unable to conclude that the brief discussion of MRPC 5.4 by the probate court requires reversal, given the many additional reasons identified by the court for denying the contingency-fee arrangement (e.g., the lack of cited authority for the contingency-fee arrangement, the probate court's authority to review fees under MCL 700.3721, the ways in which PAR minimizes the risk of nonrecovery, and the irrationality of making these particular estates bear the costs of any nonrecovery in other cases). PAR also argues that the trial court erroneously made a "suggestion" that the contingency-fee agreement violated public policy. PAR is correct that a case cited by the probate court on the public-policy question, *Dupree v Malpractice Research, Inc*, 179 Mich App 254, 260-266; 445 NW2d 498 (1989), is not directly applicable here given that *Dupree* held that contingency-fee agreements for medical expert-witness testimony contravened public policy. Nonetheless, some reasoning from *Dupree* is arguably applicable here, including this Court's observation that the Michigan Supreme Court possesses exclusive control over contingency fees. See *id*. at 263. In the absence of express authorization of contingency fees for agents of personal representatives, it is reasonable to question whether such fees are permitted. Viewing the probate court's opinion as a whole, PAR has not demonstrated that awarding compensation at an hourly rate was an abuse of discretion in the present cases.

PAR argues that its services were essential to the estates. PAR notes that it typically locates a property on the cusp of foreclosure after members of a decedent's family have abandoned the property and that the timeframes in the instant cases indicate that approximately 11 months had passed without family intervention to probate the estates before PAR took action. PAR claims that there would be no estate assets to distribute to heirs if PAR had not located the properties and brought them to the attention of Xuereb. PAR also asserts that in slightly more than three years, it has assisted in finding and liquidating more than $1.1 million in estate assets that otherwise would not have been available to the heirs of those estates. Thus, PAR argues, its services are essential and deserving of compensatory recognition. We discern two flaws in PAR's argument on this point. First, to the extent that PAR addresses its overall record for the last three years in rescuing assets of various estates, its argument is insufficiently tailored to addressing the reasonableness of compensation for PAR's services in the present cases. Second, although PAR has articulated a ground for concluding that its services were useful in preserving assets of the estates in the present cases and that PAR is thus deserving of compensation, the fact remains that PAR has in fact been awarded compensation in these cases, albeit at an hourly rate rather than on PAR's preferred contingency-fee basis. Again, there is no precise fee schedule or

formula that must be used in calculating the amount of compensation to be paid, see *Temple*, 278 Mich App at 138, and the probate court possesses broad discretion to determine the value of services in light of the court's experience and knowledge on these matters, see *Thacker*, 137 Mich App at 258. Although PAR's argument establishes its entitlement to reasonable compensation for its services, PAR does not establish that the probate court abused its discretion in evaluating the value of PAR's services and determining reasonable compensation. *Krueger*, 176 Mich App at 251-252.

PAR criticizes the probate court's reliance on caselaw addressing compensation for personal representatives and for attorneys engaged by an estate. As discussed, however, the probate court reasonably considered such caselaw by analogy, given the absence of authority directly addressing the method of determining reasonable compensation for nonattorney agents engaged by a personal representative pursuant to MCL 700.3715(v). The principles governing the method of determining reasonable compensation for attorneys and fiduciaries set forth in cases such as *Temple*, *Krueger*, and *Thacker* are useful guides in assessing the reasonableness of compensation for nonattorney agents of a personal representative. PAR fails to establish that the probate court's reasoning by analogy was flawed.

PAR argues that the award of compensation based on the time expended by PAR in providing services for the estates was inappropriate because PAR was an independent contractor rather than an employee of the personal representative and because PAR only receives fees in one-third of the cases on which it expends time and services. PAR contends that if it were to be awarded fees based only on time expended in successful cases, it would fail to make a profit or even cover its overhead expenses. This argument simply reformulates arguments addressed earlier. In addition, PAR cites no authority establishing that compensation based on time expended in providing services is an inappropriate method for determining compensation to an independent contractor. In the analogous context of determining reasonable compensation to the personal representative, this Court has noted that "[t]he amount of time actually spent on estate administration is a factor in determining reasonable compensation." *Krueger*, 176 Mich App at 251-252. Moreover, as explained earlier, PAR's generalized arguments regarding the viability of its overall business model do not establish that the probate court's declination to award a contingency fee in these cases constituted an abuse of discretion.

Finally, PAR contends that the probate court abused its discretion by setting an arbitrarily low hourly rate for PAR's services. PAR argues that its staff includes a law school graduate and a seasoned analyst but that the probate court valued the services of those employees at what PAR claims is a beginning secretarial rate. PAR argues that the compensation must recognize the essential nature of PAR's services and provide a financial incentive for PAR to continue its business. According to PAR, the awards in these cases, if awarded regularly in other cases, would result in the generation of no profit for PAR and cause it to go out of business. PAR says this would cause heirs of estates to lose millions of dollars.

PAR's argument is unavailing. The probate court did not set an arbitrarily low hourly rate. As the probate court noted, PAR submitted no documentary support for its claim that Steve Mogdis, the manager and coordinator for PAR, was entitled to a $195 hourly rate and that Vicki Sarasin, a research assistant for PAR, was entitled to a $125 hourly rate. See *Comerica Bank*, 179 Mich App at 724 (the claimant has the burden of proving the reasonableness of its charges);

*Krueger*, 176 Mich App at 251 (noting the analogous burden of the personal representative to present records concerning his services when seeking compensation). Although Mogdis is a law school graduate, he conceded that he is not a licensed or practicing attorney, and hearing testimony established that Sarasin performs "real estate and Probate research" but that she has no "paralegal background or experience or training" and has "no formal education in any other legal credentials [or] anything like that[.]" The probate court reasonably concluded that the work performed by PAR staff does not require a high level of expertise or skill. Mogdis's testimony indicated that the majority of work involved reviewing public records and preparing documents, with most of the research and work conducted on a computer. The probate court also took note of the compensation paid by PAR to Mogdis and Sarasin. Using its knowledge and experience regarding these matters, including its familiarity with the amounts charged by attorneys and corporate fiduciaries in Wayne County, as well as the circumstances surrounding the administration of these estates, the probate court concluded that a $45 hourly rate was appropriate. The probate court's determination fell within the range of reasonable and principled outcomes. See *Thacker*, 137 Mich App at 258 (noting that the probate court possesses "the broadest discretion to evaluate the worth of the services rendered in light of its experience and knowledge of such matters").

PAR's suggestion that it may go out of business if reasonable compensation is determined in the same manner in future cases is speculative. PAR's failure to obtain the hourly rates requested here was due in part to PAR's own failure to support its claimed hourly rates. No basis exists to discern the amount of any reasonable compensation that will or should be awarded to PAR in other cases that are not presently before this Court. In any event, PAR has failed to establish that the long-term viability of its business model constitutes a central consideration. It is the reasonableness of compensation in the cases presently before this Court that is paramount.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Patrick M. Meter