*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SPECIAL NEEDS TRUST for the benefit of
TALONDA MOSS.

---

TALONDA MULGREW,

        Petitioner-Appellee,

v

WANDA MOSS,

        Respondent-Appellant,

and

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Appellee.

FOR PUBLICATION
July 14, 2022
9:05 a.m.

No. 357836
Eaton Probate Court
LC No. 20-056394-TV

---

Before: GLEICHER, C.J., and GADOLA and YATES, JJ.

YATES, J.

At the age of 16, Petitioner Talonda Mulgrew suffered a traumatic brain injury as a result of an automobile accident. Her family pooled the resources provided through government benefits and an arbitration award, created a discretionary special-needs trust on July 29, 2010, and installed her mother, Respondent Wanda Moss, as the trustee. Over the next decade, however, something remarkable happened. Specifically, Talonda recovered from her traumatic brain injury, completed high school and college, obtained gainful employment, married, and handled her financial affairs. Consequently, on October 22, 2020, Talonda filed a petition to terminate the trust, and the probate court granted that request despite a motion for summary disposition under MCR 2.116(C)(10) filed by her mother in opposition to Talonda's petition. Her mother appealed, insisting that the probate court erred in terminating the trust. We disagree, so we shall affirm the probate court's order.

-1-

## I. FACTUAL BACKGROUND

The underlying facts are not in dispute. In August 2002, Talonda suffered a traumatic brain injury in an automobile accident. She received payments from several sources in the wake of that accident, and some of those funds were provided for attendant care furnished by family members. Talonda's family decided to pool the resources intended for her benefit, and then her family set up a special-needs trust for the benefit of Talonda. The trust dated July 29, 2010, identified Talonda's mother, Wanda Moss, as the settlor and trustee. The "purpose and intent" of the trust described in section 1.2 made clear that:

> This Agreement is established as a discretionary special needs trust under the provisions of 42 USC 1396p(d)(4)(A), commonly known as an Exception A Trust. The Trust is established for the sole benefit of TALONDA MOSS, an individual under the age of 65 years who is disabled as defined in 42 USC 1382c(a)(3). The property of this Trust is available to supplement the quality of life of TALONDA MOSS while she is alive. All provisions of this Trust shall be interpreted to qualify this Trust under 42 USC 1396p(d)(4)(A). Any provision of this trust that prevents this Trust from qualifying under 42 USC 1396p(d)(4)(A) shall be null and void.

The trust contemplated that Talonda would be a "disabled person" for the rest of her life.

On October 22, 2020, ten years after the creation of the trust, Talonda filed a "petition for supervision and termination of special needs trust F/B/O Talonda Moss." In her petition, Talonda explained that she was 34 years old, married to Raymond Michael Mulgrew, a graduate of high school and Michigan State University, employed as a department director for Habitat for Humanity Capital Region, and "dependable, capable, organized and fiscally responsible" in the eyes of those who work with her. Accordingly, Talonda asked the probate court to direct the trustee to take the steps necessary to terminate the trust, including payment of a $44,000 obligation to the Michigan Department of Health and Human Services and disbursement of trust assets in the forms of money and Talonda's home in Lansing.[1]

Talonda's mother, acting in her capacities as the settlor and trustee, opposed the petition to terminate the trust. And, in the fullness of time, Talonda's mother moved for summary disposition under MCR 2.116(C)(10), contending that MCL 700.7411 precludes termination of the irrevocable trust without the consent of the trustee and that MCL 700.7412 does not permit either termination or modification of the trust "because doing so would not advance the stated purpose of the Trust to provide protection of the assets for the sole benefit of Talonda Moss." Talonda responded with her own motion for summary disposition under MCR 2.116(C)(10) and a request for relief under

---

[1] Section 3.1A of the trust includes a backpay provision stating that "TRUSTEE shall distribute to the State of Michigan (or any other State) so much of the trust assets, principal and income, in an amount equal to the total medical assistance paid to or on behalf of TALONDA MOSS by the State of Michigan (or any other State) up to the full amount of the assets in this Trust." Everyone seems to agree that the trust would be obligated under that provision to pay approximately $44,000 in government benefits that Talonda received. That explains why the Michigan Department of Health and Human Services was named as a party in the proceedings before the probate court.

MCR 2.116(I)(2). On June 23, 2021, the probate court heard arguments on the competing motions for summary disposition and then ruled from the bench in Talonda's favor, awarding her summary disposition and ordering termination of the special-needs trust under MCL 700.7412(2) "because of circumstances not anticipated by the settlor," i.e., Talonda's remarkable recovery. This appeal followed the entry of a written order memorializing the probate court's oral ruling.

## II. LEGAL ANALYSIS

The probate court awarded summary disposition to Talonda under MCR 2.116(C)(10) and ordered the termination of the special-needs trust under MCL 700.7412(2). This Court reviews the award of summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id.* at 160. " 'A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.' " *Id.* With respect to the probate court's termination of the trust under MCL 700.7412(2), this Court reviews "de novo issues of statutory interpretation." *In re Estate of George Eugene Stan*, 301 Mich App 435, 442; 839 NW2d 498 (2013). "But appeals from a probate court decision are on the record, not de novo." *In re Clarence W Temple and Florence A Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). Thus, the probate court's "dispositional rulings are reviewed for an abuse of discretion." *Id.* The probate court "abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *Id.* With these legal principles in mind, we turn to the probate court's rulings on summary disposition and termination of the trust.

Wanda Moss—as the settlor, trustee, and mother of Talonda—argues that the probate court lacked the authority to terminate the trust under MCL 700.7412(2). That statute provides that the probate court "may modify the administrative or dispositive terms of a trust *or terminate the trust* if, because of circumstances not anticipated by the settlor, modification or termination will further the settlor's stated purpose or, if there is no stated purpose, the settlor's probable intention." MCL 700.7412(2) (emphasis added). Here, the trust lays out its "purpose and intent" in section 1.2, so we must glean the settlor's intent from that provision. As we have explained, "[w]hen interpreting a trust, the probate court's objective is to ascertain and give effect to the intent of the settlor." *In re Estate of Stan*, 301 Mich App at 442. "The intent of the settlor is to be carried out as nearly as possible." *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008). The settlor's intent "is gauged from the trust document itself, unless there is ambiguity." *Id.* Thus, our analysis of the settlor's intent begins and ends with the language of section 1.2 of the trust unless it is ambiguous.

The settlor's intent, as expressed in section 1.2 of the trust, is clear and unambiguous: "The property of this trust is available to supplement the quality of life of TALONDA MOSS while she is alive." Although the trust was created on the assumption that Talonda would remain "disabled as defined by 42 USC 1382c(a)(3)" for the rest of her life, the probate court concluded Talonda recovered from her traumatic brain injury to such an extent that she was no longer disabled when she petitioned for termination of the trust. The probate court's decision that there was no genuine issue of material fact on that point not only supported an award of summary disposition pursuant to MCR 2.116(C)(10) in her favor, but also provided "circumstances not anticipated by the settlor," as contemplated by MCL 700.7412(2). As a result, MCL 700.7412(2) empowered the probate court to "terminate the trust if . . . termination will further the settlor's stated purpose[.]" See MCL 700.7412(2). Manifestly, termination of the trust based upon Talonda's remarkable recovery had

the effect of furthering the settlor's unambiguously stated purpose by "supplement[ing] the quality of life of TALONDA MOSS while she is alive." Allowing Talonda to handle her money and own her home by terminating the trust supplements the quality of her life by enabling her to become truly stable and self-sufficient. Moreover, as the probate court noted, because the trust was created to address Talonda's needs when she was "disabled," her recovery from that status means that the foundational purpose of the trust no longer applies.

Wanda Moss contends on appeal that the probate court abused its discretion by terminating the trust against her wishes. She argues that termination of the trust contravenes four purposes of the trust: (1) to ensure that the trust funds are used for the sole benefit of Talonda; (2) to provide for effective management of the trust assets; (3) to protect the assets from the claims of creditors; and (4) to preserve Talonda's eligibility for need-based benefits if she requires them once again in the future. These four purported purposes, however, are not stated in section 1.2 of the trust, which defines the "purpose and intent" of the trust. Because the settlor's "intent is gauged from the trust document itself, unless there is ambiguity[,]" *In re Kostin Estate*, 278 Mich App at 53, we cannot rely upon such purported purposes that are not clearly set forth in section 1.2 of the trust. Beyond that, Wanda Moss suggests that MCL 700.7412 does not permit termination of an irrevocable trust when the settlor is still alive and objects to termination. Nothing in the language of MCL 700.7412 even hints at such a restriction. Indeed, MCL 700.7412(2) refers simply to "a trust," drawing no distinction between revocable and irrevocable trusts.[2] In addition, MCL 700.7412(2) neither refers to the settlor being alive nor affords the settlor veto power over termination of a trust. As a result, we conclude that the probate court properly recognized the scope of its authority to terminate the trust and acted well within its discretion in exercising that authority at the behest of Talonda.[3]

Affirmed.

/s/ Christopher P. Yates
/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola

---

[2] In contrast, MCL 700.7411 refers to "revocable trusts" and "irrevocable trusts" in authorizing the modification or termination of noncharitable trusts. Thus, our Legislature clearly knows how to limit the probate court's power to terminate irrevocable trusts. See *In re Jajuga Estate*, 312 Mich App 706, 712; 881 NW2d 487 (2015) (" 'Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion.' "). Curiously, Talonda relies upon MCL 700.7411 as well as MCL 700.7412(2) to support the probate court's ruling in her favor. From our point of view, however, the probate court plainly (and correctly) chose MCL 700.7412(2) as the best and most logical path to termination of the trust. Therefore, we shall not follow Talonda down the path of MCL 700.7411 in analyzing the soundness of the probate court's ruling.

[3] The probate court based its decision upon language in the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, so respondent's reliance upon decisions rendered before April 1, 2000, when EPIC went into effect, does not persuade us to call into question the probate court's reliance upon the statutory basis for termination of the trust under MCL 700.7412(2).