# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* MARY ANN O'NEILL REVOCABLE TRUST.

---

KATHLEEN A. MILLS, Personal Representative
of the ESTATE OF JOHN F. MILLS,

   Petitioner-Appellee,

v

JOHN P. O'NEILL, II, MARY K. O'NEILL,
ELLEN F. O'NEILL and ANNE M. O'NEILL,

   Respondents,

and

MICHAEL G. O'NEILL, Trustee,

   Respondent-Appellant.

UNPUBLISHED
May 19, 2015

No. 319546
Oakland Probate Court
LC No. 2008-317805-TV

---

*In re* JOHN P. O'NEILL REVOCABLE TRUST.

---

KATHLEEN A. MILLS, Personal Representative
of the ESTATE OF JOHN F. MILLS,

   Petitioner-Appellee,

v

JOHN P. O'NEILL, II, MARY K. O'NEILL,
ELLEN F. O'NEILL and ANNE M. O'NEILL,

   Respondents,

and

No. 319551
Oakland Probate Court
LC No. 2009-325053-TV

-1-

MICHAEL G. O'NEILL, Trustee,

        Respondent-Appellant.

_____

Before: HOEKSTRA, P.J., and SAWYER and BORRELLO, JJ.

PER CURIAM.

Michael G. O'Neill, as the successor trustee of the Mary Ann O'Neill Revocable Trust and the John P. O'Neill Revocable Trust, appeals the probate court's orders granting petitioner's, Kathleen A. Mills as the personal representative of the Estate of John P. Mills, request for the payment of trustee and attorney fees and costs from the aforementioned trusts. Specifically, respondent challenges the award of fees and costs in the amount of $19,595.80 from the Mary Ann O'Neill Revocable Trust and $193,245.58 from the John P. O'Neill Revocable Trust.[1] For the reasons set forth in this opinion, we vacate the probate court's orders and remand for further proceedings.

## I. BACKGROUND

John P. O'Neill, and his wife, Mary Ann O'Neill each maintained a revocable living trust. Their five children[2], the respondents in this action, were the beneficiaries. John F. Mills was a former law partner of John P. O'Neill and was named as the trustee of both trusts following the deaths of the trust settlors. Mary Ann O'Neill's trust (Mary Ann's Trust) was comprised solely of an improved property referred to as the "Glen Lake Property," located in Leelanau County. John P. O'Neill's trust (John's Trust) held bank accounts, two IRAs, life insurance proceeds, and three parcels of improved property, including: (a) a home on Randall Court in Birmingham, Michigan, (b) a condominium in Birmingham, Michigan, and (c) a cottage in Cheboygan, Michigan. *In re Estate of John P O'Neill Revocable Trust*, unpublished opinion per curiam of the Court of Appeals, issued September 26, 2013 (Docket Nos. 303629; 303631; 303632; 303655) at 3-4.

This Court previously explained how the initial litigation in this proceeding arose as follows:

> In August 2009, Mills filed petitions to allow accounts covering March 2007 to June 2009 relative to both trusts and files, seeking approval of trustee and

---

[1] The breakdown of fees for each trust are as follows: (a) Mary Ann O'Neill Trust: (i) $16,945.50 in attorney fees and costs, (ii) $2,650.30 in trustee fees and costs, and (iii) zero dollars in expert witness fees; (b) John P. O'Neill Trust: (i) $128,768.74 in attorney fees and costs, (ii) $59,001.84 in trustee fees and costs, and (iii) $5,457 in expert witness fees.

[2] John P. O'Neill, II, Michael G. O'Neill, Mary K. O'Neill, Ellen F. O'Neill and Anne M. O'Neill.

attorney fees, administrative expenses, completed distributions, and a proposed plan of distribution. He asked the probate court to approve $107,279 in trustee fees and $10,797 in outside attorney fees incurred in the administration of John's trust, as well as requesting approval of $4,058 in trustee fees and $3,595 in outside attorney fees incurred in the administration of Mary Ann's trust. The O'Neill siblings, except for Anne, objected to both petitions, accusing Mills of breaching fiduciary duties, mismanaging the properties, improperly administering the trusts, favoring Anne over the other siblings, charging fees that were excessive as to hourly rate and time consumed, and charging fees that were generated by work on the IRAs and real estate that, had Mills acted consistent with his fiduciary duties, would not have been incurred. [*Id.* at 4.]

Ultimately, the probate court granted summary disposition in favor of Mills, but reduced the fees that Mills requested. The probate court also found that "the O'Neill siblings, sans Anne, engaged in obstructive behavior and that prevented Mills from expeditiously administering the properties." *Id.* at 5-6. The probate court also removed Mills as trustee, not due to Mills' wrongdoing, but instead "due solely to the conduct of the [respondents]." Respondent Michael G. O'Neill was appointed as the successor trustee of both trusts.

In addition to filing their objections to Mills' accounts, respondents, with the exception of Anne O'Neill, filed a separate action in the probate court against Mills and his law firm, asserting gross negligence in the handling of various trust assets. The probate court granted summary disposition in favor of Mills as to the separate lawsuit. *Id.* at 6.

Respondents appealed the probate court's orders. This Court consolidated the appeals and affirmed the orders in their entirety. Following the appeal, on September 29, 2011, Mills filed his fourth, fifth and sixth (final) accounts, covering July 1, 2009 through September 16, 2011. For John's Trust, the total compensation sought for trustee, attorney and expert witness fees and costs was $238,256.35. For Mary's Trust, Mills sought a total of $20,147.30 for trustee and attorney fees and costs.

Anne O'Neill filed objections to the accounts based on a myriad of errors. Primarily, Anne asserted Mills was not entitled to expenses associated with the litigation of the objections to the 2009 accounting based on the probate court's upholding of the objections to those accounts and a finding of excessive fees charged. She further objected to the entitlement of any fees or expenses pertaining to the civil malpractice action. It was also asserted that Mills was charging his attorney rate for trustee work, that the times were excessive and duplicative for Mills, his paralegal and attorney and that the payment of $5,649.85 for a claim paid on behalf of the John P. O'Neill estate, allegedly for monies outstanding to Mills's law firm, lacked sufficient documentation and comprised a conflict of interest.[3]

A series of hearings on the objections was held over several days and spanning multiple months. A large portion of the contention and testimony focused on Mills' billing as either an

---

[3] Similar objections to the accounts were also filed by Michael O'Neill.

attorney or as a trustee. The billings were examined in some detail denoting that Mills would often bill at his legal rate at the same time and for the same events or work as billed by his retained counsel. For instance, Mills acknowledged billing $300 an hour for preparing for his deposition and those of other individuals, even though retained counsel conducted the depositions. Similar charges were explored with Mills regarding his charging at his attorney fee rate for attending court hearings where he was represented by counsel. When questioned regarding how his possession of "a law license permitted [Mills] to make the decision" of billing at his $300 an hour rate, Mills responded, indicating the subjective nature of his thinking process: "Again, I don't think it has to do with whether I had a law license or not, I'm a lawyer and I had instructions from the Judge as to what I can charge for what I considered to be legal services and that's what I charged."

Similar issues were raised with regard to the paralegal fees billed in conjunction with Mills and the duplication of services given the attorney for Mills also billing for his paralegal's services. Mills's paralegal, Ann McGowan, was permitted a paralegal fee rate of $125 an hour and a clerical fee rate of $80 an hour. Of the total time charged by McGowan to the respective trusts, 227 hours were billed at her paralegal rate and only 17 hours were charged at the clerical rate. Approximately 8.35 hours were reduced for McGowan from her total hours billed by Mills.

Other evidence introduced at the hearings included testimony from Patrice Ticknor and Donald Carney, Jr., attorneys with Berry Moorman, which represented Mills as the trustee. Ticknor and Carney explained the rationale behind their billings.

Mills also introduced testimony of an expert witness, John Mabley, for justification of the fees. Mabley testified, following a review of the charges, that he found the allocation of fees appropriate, the paralegal fees appropriate and denied that any of the charges were fees-for-fees. Mabley asserted that the approach used by Mills to allocate fees was reasonable, but seemed to backtrack on his response during cross-examination wherein he indicated that the reasonableness of Mills' allocation method "probably" did not make sense "without more explanation as to how he came to that conclusion." Mabley testified that the court should exclude "fees for fees."

The parties were permitted to file briefs for their closing arguments. Michael O'Neill asserted that the majority of activity billed in the fourth, fifth and sixth accountings dealt with attempts to collect fees as there was little, if any, work remaining regarding the trust assets. Michael O'Neill asserted $172,226.69 comprised fees-for-fees and should be disallowed from payment by the trusts. Michael O'Neill also argued that Mills failed to carry his burden of proof in establishing the propriety of the fees charged and that Mills failed to explain any rationale to justify his primarily charging the trust at his attorney hourly rate rather than his trustee rate. Michael O'Neill also accused Mills of self-dealing in the payment from the trust of alleged outstanding attorney fees owed to his law firm.

Mills asserted that the fees and costs, as billed, should be allowed because Mills was simultaneously defending against claims of negligence, surcharge and removal in conjunction with respondents' objections to the accounts. He noted that he was also concurrently defending himself against a civil action. The fact that his defense occurred in the context of a fee dispute comprises an exception to the fees-on-fees prohibition. Mills argued that "the fees and costs here are extraordinary because of these unique circumstances caused by the Respondents' bad faith."

On November 21, 2013, the probate court ruled from the bench. The probate court indicated that, on a superficial level, "the only thing up for approval by the court were Mr. Mills and his counsel's fees. And so on its face all of the litigation is fees for fees, on its face." The probate court then proceeded to explicate an exception to the fees-on-fees rule, stating:

> There's exception to this lone rule, one of which is cited in *Sloan*.[4] They talk about extraordinary circumstances and they specifically cite [MCR] 2.114 and 5.114 regarding sanctioning parties for frivolous pleadings, pleadings not arguably based on fact and law. That allegation's not made here. And the question is whether there are other exceptions, other circumstances that are extraordinary such that even if the underlying litigation could be viewed as fees for fees the trustee can nonetheless still be reimbursed for fees incurred by both the trustee and his counsel in defending a fee petition, whether those fees could be compensated, nonetheless, and whether extraordinary circumstances exist here.

> And that is, you know, how he wants to apply the *Hammond*[5] – I'll call it the *Hammond* line of cases against the general rule stated in *Sloan.* And, you know . . . [the Court of Appeals] . . . released an unpublished opinion on September 26, 2013, which I found especially helpful and actually critical to my decision in this case. In that case there were many issues that were litigated regarding the objections of the O'Neill children.

> * * *

> The Court of Appeals affirmed my prior decision.

> And I think that was critical to deciding what to do in this case. Because even if the *Hammond* line of cases could be considered an exception to the rule in *Sloan*, if the Court of Appeals had found that Mr. Mills had, I'll put it under the heading of breached his fiduciary duties in any of the ways argued on behalf of the O'Neill children, then it is likely that the *Hammond* line of cases could not be applied as an exception to the *Sloan* rule and the argument on behalf of the trustee would fall at that point. [Footnotes added.]

After initially indicating that the case was predominantly about fees-for-fees, the probate court appeared to reverse course and reasoned that the majority of respondent's initial complaints and challenges were focused on Mills' performance as trustee and allegations of negligence or breach of duty, with minimal attention or allegations related to the fees issue.

The probate court also rejected any claim by respondents that Mills' fees should be reduced based on discrepancies in billing between his work as trustee and as an attorney based,

---

[4] *In re Sloan Estate*, 212 Mich App 357; 538 NW2d 47 (1995).

[5] *In re Estate of Hammond*, 215 Mich App 379; 547 NW2d 36 (1996).

in part, on this Court's prior ruling on the issue of fees and the absence of any breach of fiduciary duty. The probate court explained:

> You know, based on the analysis that the Court of Appeals made, I know I'm not bound by it, but I read their reasoning there and the facts they put out there to support it, and I can't say I disagree with their conclusions there.

> And so I'm not going to look through and try to see if there were places where, going back, I might have said this is really trustee work, not legal work, so Mr. Mills should only be paid a hundred and fifty. I'm not going to do that. Where Mr. Mills had charged $300.00 an hour, he should be paid $300.00 an hour. Again, based on the reasoning in the Court of Appeals opinion. I'm – I rely on that. . . .

> I went a different way with it, but now I am going to allow Mr. Mills his $300.00 per hour for anything that he charged $300.00 an hour for.

The probate court did review the recommendations of Mabley regarding those entries he deemed to constitute fees-on-fees. Finding Mabley's determinations on this issue to be "well supported by the evidence," the probate court indicated its reliance on his characterizations of the billings and reduced the fee requests accordingly. Specifically:

> [R]egarding Berry Morman fees and costs in the Mary Ann O'Neill trust, it's a reduction of fees as determined by . . . Mabley . . . of $461.50. The adjusted amount of fees and costs requested is $16,945.50, I'm granting that amount to Berry Moorman, or to the trustee for the payment of Berry Moorman's fees and costs in the Mary Ann O'Neill trust.

> Likewise, the reductions related to the civil action . . . of twenty six thousand nine hundred and fifty four plus costs of ninety four eighty two, and the reduction as fees for fees as determined by Mr. Mabley of five thousand eight hundred and nineteen, I'm ordering that Berry Moorman be compensated . . . by the John O'Neill trust in the amount of $128,746.74.

> Then the trustee's fees and costs under the Mary Ann O'Neill trust, after reduction of fees as determined by the expert witness, Mabley, the adjusted amount of fees and costs awarded is $2,650.30.

> In the John O'Neill trust, after the reduction of fees as determined by the expert witness . . . the adjusted amount of fees and costs awarded to Mr. Mills is $59,001.84.

> * * *

> In the John O'Neill trust case, after adjustment by the expert witness . . . of $2,025.00, I'm awarding expert witness fees in the amount of five thousand four hundred and fifty seven in the John O'Neill trust.

-6-

Written orders were entered memorializing the probate court's rulings. These appeals ensued and the matters were consolidated on January 7, 2014.[6]

## II. STANDARD OF REVIEW

On appeal, appellants' arguments can be distilled to one issue: whether the probate court erred in its award of trustee and attorney fees and costs.

We review a probate court's ruling regarding a request for fees for an abuse of discretion, and the probate court's findings of fact that it relied on to reach its decision are reviewed for clear error. *Edge v Edge*, 299 Mich App 121, 127; 829 NW2d 276 (2012). The probate court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes." *Id.* (quotation marks and citation omitted).

## III. GOVERNING LAW

A probate court may allow a trustee to charge against trust assets reasonable expenses, including attorney fees that are incurred while rending services to the trustee in his or her capacity as a trustee. *In re Temple Marital Trust*, 178 Mich App 122, 134; 748 NW2d 265 (2008). In addition, a trustee may charge attorney fees and expenses to the trust estate incurred in defending an action challenging the performance of the trustee's duties "where no wrongdoing is proved." *Id.* at 135 (quotation marks and citations omitted). Fees charged to a trust must be "reasonable under the circumstances." *Id.*; MCL 700.7708(1). The probate court must make findings to determine whether fees are reasonable. *Comerica Bank v City of Adrian*, 179 Mich App 712, 724; 446 NW2d 553 (1989).

## IV. ANALYSIS

Following the first appeal in this case, Mills' submitted his final accounts wherein he sought reimbursement for both attorney and trustee fees and costs. Respondents objected on several grounds. The main objections included claiming that some of the fees should not be reimbursed because Mills improperly billed the trust at the attorney rate of $300 compared to the trustee rate of $150, and that some of the fees were not recoverable because they amounted to "fees-on-fees." As discussed in more detail below, to properly address and resolve these issues, the trial court was required to: (1) clearly articulate findings of fact with respect to whether the challenged fees and costs were reasonable under the circumstances, (2) if fees and costs were reasonable under the circumstances, clearly articulate findings of fact as to whether it was reasonable for Mills to have incurred these expenses acting as an attorney as opposed to a trustee, and (3) clearly articulate findings of fact to determine the fees-for-fees in this case and exclude those fees pursuant to *In re Sloan Estate*, 212 Mich App 357; 538 NW2d 47 (1995).

---

[6] *In re Mary Ann O'Neill Revocable Trust*, unpublished order of the Court of Appeals, entered January 7, 2014 (Docket Nos. 319546; 319551).

Our review of the record leads us to conclude that the trial court failed to make the requisite findings to resolve the issues raised on remand. Instead, the trial court misconstrued this Court's prior opinion in several respects. First, we note that the probate court stated "based on the analysis that the Court of Appeals made, *I know I'm not bound by it. . . .*" This amounted to clear legal error. Although this Court's prior opinion was unpublished, it was nevertheless binding on the probate court. See *City of Kalamazoo v Dep't of Corrections*, 229 Mich App 132, 135; 580 NW2d 475 (1998) ("[A]s a general rule, a ruling on a legal question in the first appeal is binding on all lower tribunals and in subsequent appeals.")

Second, the probate court misconstrued this Court's prior opinion with respect to the issue of the reasonableness of fees and costs contained in Mills' final accounts. Specifically, the probate court mistakenly interpreted this Court's decision in the prior appeal as an affirmation of Mills' decisions regarding which fee to charge for an activity and the amount of fees to assess. Those issues were not before this Court in the initial appeal. Rather, this Court concluded that "the O'Neill siblings effectively waived any claim that the $300 *rate* was unreasonable." *In re Estate of John P. O'Neill Revocable Trust*, unpub op at 18 (emphasis added). In other words, this Court previously resolved the issue as to the hourly rate that Mills assess when acting as an attorney. It did not address whether the fees that were ultimately charged were reasonable under the circumstances and it did not grant Mills carte blanch authority to assess fees.

With this backdrop, we proceed to provide the following guidance to the probate court regarding the findings that must be made to resolve the issues in this case:

## (1) WHETHER THE CHALLENGED FEES AND COSTS WERE REASONABLE UNDER THE CIRCUMSTANCES

Initially, the probate court needed to clearly articulate findings of fact with respect to whether the challenged fees and costs were reasonable under the circumstances. In order to do so, however, this necessarily required respondents to specify which fees they were challenging. Although Mills had the burden to prove that the fees and costs were reasonable, respondents needed to articulate with specificity which fees they were challenging. At that point, Mills had the burden to establish that the challenged fees and costs were reasonable under the circumstances. See e.g. *In re Temple Marital Trust*, 178 Mich App at 135; *Comerica Bank*, 179 Mich App at 724; MCL 700.7708(1).

With the challenged fees and costs clearly identified, the probate court needed to clearly articulate findings of fact as to whether those expenses were reasonable under the circumstances. In doing so, the probate court should consider the following non-exhaustive factors:

> (1) the size of the trust, (2) the responsibility involved, (3) the character of the work involved, (4) the results achieved, (5) the knowledge, skill, and judgment required and used, (6) the time and the services required, (7) the manner and promptness in performing its duties and responsibilities, (8) any unusual skill or experience of the trustee, (9) the fidelity or disloyalty of the trustee, (10) the amount of risk, (11) the custom in the community for allowances, and (12) any estimate of the trustee of the value of his services. [*Comerica Bank*, 179 Mich App at 724.]

We note that it is within the probate court's discretion to determine the weight any factor should be given and to ultimately determine the reasonableness of compensation, and "the probate court must consider the circumstances of the case in determining which factors are to be given weight." *Id*. However, "the burden of proof is on the claimant to satisfy the court that services rendered were necessary and that charges therefor[e] are reasonable." *Id*. The term "reasonable" is defined in *Black's Law Dictionary* (10th ed), as "[f]air, proper, or moderate under the circumstances; sensible." While "a claimant's failure to present records concerning his services is usually weighed against him[,]" the determination of reasonableness is ultimately within the probate court's discretion. *Comerica Bank*, 179 Mich App at 724.

Here, although the probate court noted that it was taking into account the size of the trusts, the probate court did not otherwise articulate findings of fact with respect to whether the challenged fees were reasonable under the circumstances. On remand, the court should consider the record evidence and articulate findings of fact as to each factor that it deems relevant in this case to determine whether the challenged fees and costs were reasonable.[7] *Id*.

### (2) WHETHER THE FEES INCURRED WERE IN THE COURSE OF MILLS ACTING AS AN ATTORNEY OR AS A TRUSTEE

In the event that the probate court finds that Mills incurred reasonable fees and costs, the probate court should then clearly articulate findings of fact as to whether it was reasonable for Mills to have incurred those expenses acting as an attorney or as a trustee. Respondents contest the arbitrary and unexplained method used by Mills to determine which rate he charged for certain services or activities, particularly given the concurrent participation and billing by his retained counsel for many of the same activities. First, it captures this Court's attention that Mills billed 94-percent of his fees at the $300 hourly rate as compared to 6-percent at the $150 rate for a trustee. The probate court should determine whether it was reasonable and necessary for Mills, while simultaneously employing legal counsel who was also billing for many of the same or identical services, to have charged the vast majority of his fees at his legal rate. This Court has recognized that when a "portion of the work done by the attorneys was redundant and unnecessary" it was deemed to be "unreasonable." *Sloan*, 212 Mich App at 364.

---

[7] We note that, in making these findings, the probate court should specifically address respondents' claim of self-dealing with respect to a $5,649.85 charge that Mills assessed to the trusts for payment of an older, outstanding bill alleged to be owed by John P. O'Neill to a member of Mills' law firm for work performed in 2005. In resolving whether this cost was reasonable, we note that the probate court should "closely scrutinize" transactions involving self-dealing, particularly where a trustee's loyalties may be divided or subject to inquiry. *In re Green Charitable Trust*, 172 Mich App 298, 314; 431 NW2d 492 (1988). The court should consider that the record does not indicate the level of inquiry undertaken by Mills to verify the debt, to determine whether the client had actually been billed for the alleged services, or the attempt to discount or compromise the debt based on its age and the fact that the client continued to be a source of income to the law firm.

Second, when questioned regarding the criteria he used to determine his proper fee rate for an activity, Mills appeared unable to provide any rational explanation for his decision other than his own discretion and the apparent approval of the probate court to engage in a carte blanche billing method. For example, Mills billed for his own deposition as the trustee at his attorney rate despite the presence of outside counsel at his deposition, along with other depositions conducted. In addition, Mills stated that his decision to bill at his attorney rate was simply because he possessed a law license and was signing a paper that would be submitted to the court. Furthermore, Mills initially billed at the trustee rate to review initial answers to interrogatories, then charged his attorney rate to review supplemental answers to those interrogatories. While the obstinacy or conduct of respondents may have justified the number of hours expended or the need to engage in certain activities, respondent's behavior was irrelevant to the decision by the trustee of which rate to apply for those activities.

We also note that, to the extent that the probate court determines that Mills' paralegal, McGowan, provided services that were reasonable under the circumstances, the probate court must then make findings of fact as to whether it was reasonable for McGowan to bill 227 hours at her paralegal rate (93%) and 17 hours at her clerical rate (7%). In making these findings, the probate court should consider that outside counsel also employed a paralegal and the probate court should determine whether it was reasonable to have two paralegals and two attorneys performing services for the trust. See *id*.

### (3) "FEES-FOR-FEES"

Respondents assert that much of the fees charged constituted fees-for-fees, which are not compensable.

The case recognized most readily and cited frequently pertaining to the fees-for-fees issue is *Sloan*, 212 Mich App at 357. In *Sloan*, it was acknowledged that "legal services rendered in behalf of an estate are compensable where the services confer a benefit on the estate by either increasing or preserving the estate's assets." *Id.* at 362. In contrast:

> "Fees for fees" claims are brought in behalf of the attorney seeking the fees and clearly do not benefit the estate because they do not increase or preserve the estate's assets. As the probate court correctly noted, the ordinary fees and costs incurred in establishing and defending a fee petition are inherent in the normal course of doing business as an attorney, and the estate may not be diminished to pay those fees and costs. [*Id.* at 363 (footnote omitted).]

An exception to the prohibition of fees-for-fees was recognized in *Sloan*, wherein this Court stated "where extraordinary fees and costs are incurred because of an opposing party's fraud, unjustified objections raised in bad faith, or other extraordinary circumstance, the probate court is authorized to impose appropriate sanctions via various fee-shifting mechanisms. See, e.g., MCR 5.114; MCR 2.114(B)-(F)." *Id.* at 363 n 2.

The probate court's holding with respect to the "fees-for-fees" issue appeared to be conflicted. Initially, the probate court stated that the litigation in the case solely involved the issue of "fees-for-fees." The probate court then noted that respondents had brought multiple

other claims, implying that the "fees-for-fees" issue was only a small part of the litigation. Ultimately, the court concluded that there were "extraordinary circumstances" such that fees-for-fees were not barred by *Sloan*. In doing so, the probate court erred as a matter of law.

An obvious inconsistency in the probate court's ruling, is the recognition by Mills in his trial brief of having charged fees-for-fees by segregating and allocating the charges of $5,101 in fees and $62 in costs to Mary Ann's Trust for the "fee dispute," with a similar delineation in John's Trust of $47,024 in attorney fees and $364.47 in costs attributable to "fee dispute." The ability to differentiate and identify these amounts from the other fees incurred constitutes an admission for the exclusion of these amounts as fees-for-fees and therefore, should not be construed as an extraordinary circumstance or included in charges as a form of punitive damages.

The probate court's reliance on *In re Estate of Hammond*, 215 Mich App at 387 was misplaced. In that case, this Court held that where "[a]ttorney fees incurred by an executor to defend against a petition for his removal are properly chargeable against the estate where no wrongdoing is proven." *Id*. However, where the fees can be distinguished as attributable solely to fee collection activities, as apparently Mills was able to discern, they should be construed as fees-on-fees and, therefore, disallowed. *Sloan*, 212 Mich App at 357. In this instance, it would appear that the probate court failed to recognize or adhere to such a distinction and merely attributed all work performed to comprise an "extraordinary circumstance" even though Mills was able to discern and identify fees incurred solely for fee collection efforts. On remand, the probate court should make findings of fact as to the amount of Mills' fees-for-fees and those should be excluded. *Id*.

## V. CONCLUSION

The probate court misconstrued this Court's prior opinion and did not make adequate findings of fact to support its award of fees and costs in this case. We therefore vacate the probate court's orders in their entirety and remand for further proceedings. On remand, the probate court must: (1) make findings of fact as to whether the challenged fees and costs were reasonable under the circumstances, (2) make findings of fact as to whether it was reasonable for Mills to incur these fees in his role as an attorney or as a trustee, (3) make findings of fact regarding the amount of "fees-for-fees" and exclude those fees from the final award.

Vacated and remanded for further proceedings consistent with this opinion. No costs awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ David H. Sawyer
/s/ Stephen L. Borrello

-11-