*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* WILLIAM JAMES ROSS IV IRREVOCABLE TRUST.

---

ANNETTE M. LEROUX, Trustee,

      Appellee,

v

ANDERS WICK and MICHELLE HARRELL,

      Appellants.

UNPUBLISHED
February 17, 2022

No. 355015
Oakland Probate Court
LC No. 2006-307608-TV

---

*In re* EDMUND WILLIAM ROSS II IRREVOCABLE TRUST

---

ANNETTE M. LEROUX, Trustee,

      Appellee,

v

ANDERS WICK and MICHELLE HARRELL,

      Appellants.

No. 355016
Oakland Probate Court
LC No. 2006-307607-TV

---

Before: GLEICHER, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

-1-

In these consolidated appeals,[1] appellants Anders Wick and Michelle Harrell appeal as of right the probate court's decision granting appellee Annette LeRoux's motion for sanctions against them under MCR 1.109(E)(5) and (6). For the reasons set forth in this opinion, we reverse.

## I. BACKGROUND

This case arises out of litigation involving the trusts of LeRoux's sons in which Wick and Harrell represented LeRoux's former mother-in-law, Corrine Breer. In a previous appeal involving these trusts, a different panel of this Court provided a detailed recitation of the facts underlying this protracted and contentious family litigation. See *In re Edmund William Ross II Irrevocable Trust*, unpublished per curiam opinion of the Court of Appeals, issued September 16, 2021 (Docket Nos. 349679, 349680, 349917, 351355, 351823, 349926, 351356, 351839, 351981, 351982, 354298, and 354303) (*Ross I*), pp 4-16. We find it is unnecessary to fully repeat that factual background here.

For purposes of resolving the instant appeal, we begin with LeRoux's April 19, 2019 motion to compel discovery that led to the probate court ordering sanctions against LeRoux and her former attorney, Richard Connors, under MCR 1.109(E). *Id.* at 4-6, 10. At that time, LeRoux was the trustee of her sons' trusts. *Id.* at 5-6, 8, 10-11. To be clear, those sanctions were a subject of the prior appeal, and the propriety of those sanctions is not before us in the instant appeal. However, those sanctions against LeRoux and Connors are intimately entwined with the basis on which the probate court subsequently sanctioned Wick and Harrell—which is the sanction ruling presently before us on appeal—so some discussion of the previous sanctions against LeRoux and Connors is necessary for background context.

As this Court noted in its prior opinion, the probate court awarded sanctions to Breer against LeRoux and Connors under MCR 1.109(E)(6) because the probate court "found that ¶ 9 of the April 19, 2019 motion to compel was, for purposes of MCR 1.109(E)(5), not 'to the best of [the trustee's and Connors's] knowledge, information and belief formed after reasonable inquiry . . . well-grounded in fact[.]' " *Ross I*, unpub op at 11 (alterations and ellipsis in original).[2] The probate court found that the allegations advanced by LeRoux and Connors in ¶ 9 were false and that Connors's explanations for subsequently withdrawing the April 19 motion to compel were not credible. *Id.* Breer filed a bill of costs detailing her requested costs and fees as sanctions under MCR 1.109(E), LeRoux filed objections to the bill of costs, and a two-day bench trial was held to determine the amount of the sanctions. *Id.*

The probate court addressed the matter in a lengthy opinion and order, issued on October 15, 2019. The probate court found, in relevant part, that LeRoux and Connors were jointly and severally liable for attorney fees and costs associated with the April 19, 2019 motion to compel, and the probate court expressly stated that " 'the applicable time period' " under review " 'begins on April 19, 2019 and ceases on July 23, 2019, the date that an Order was entered granting in part

---

[1] *In re Williams James Ross IV Irrevocable Trust*, unpublished order of the Court of Appeals, entered October 13, 2020 (Docket Nos. 355015 and 355016).

[2] The panel in *Ross I* referred to LeRoux as "the trustee."

Breer's request for sanctions.' " *Ross I*, unpub op at 11, 13. The probate court expressly " 'denie[d] the request for all services rendered before April 19, 2019 and after July 23, 2019.' " *Id*. at 13. The probate court directed Wick to recalculate the amount to be awarded in accordance with the probate court's opinion. *Id*. at 11. Notably, the probate court's July 23, 2019 order had specifically provided in relevant part that sanctions were ordered "against Petitioner Annette LeRoux, as trustee, and her attorney Richard Connors, individually, on a joint and several basis . . . ." while the October 15, 2019 opinion and order merely stated that LeRoux and Conners were jointly and severally liable without making any mention of whether LeRoux was liable in her capacity as trustee or individually.

On November 1, 2019, LeRoux filed objections to Breer's proposed order reflecting the recalculated attorney fees and costs. In these objections, LeRoux described the dispute between LeRoux's counsel and Wick over whether the probate court's October 15 order limited LeRoux's liability to her capacity as trustee or permitted her to be held personally liable for the sanctions. Wick was arguing for the latter interpretation since no restrictions on LeRoux's liability were placed in the October 15 order.

On November 6, 2019, Breer filed a motion for additional sanctions against LeRoux and Connors. The motion was signed and filed by Breer's attorneys, which included Harrell and Wick. In this motion for additional sanctions, Breer essentially raised various allegations that Connors had committed further sanctionable conduct related to the process of litigating the amount of sanctions to be imposed against LeRoux and Connors based on the April 19, 2019 motion. Breer also argued that she was entitled to the fees and costs incurred in proving the amount of reasonable sanctions to be imposed. This November 6, 2019 motion requested relief in the form of "the entry of a fee award in [Breer's] favor, and against Richard Connors and Annette LeRoux, as trustee . . . ."[3]

On November 15, 2019, Breer filed a reply to LeRoux's November 1 objections to the recalculated sanctions order. Breer argued that the language of the October 15 order did not prohibit holding LeRoux personally liable for the sanctions and that MCL 700.7910(2) authorized holding a trustee personal liability for trust obligations, such as the sanctions, if the trustee is personally at fault. Breer argued, "Ms LeRoux's abuse of her children's trusts, her efforts to use these trusts as instruments of harassment directed at her former mother-in-law, and the Court's resulting sanctions, are the personal fault of nobody other than Ms[.] LeRoux[.] She is, therefore, personally liable for the Court's sanctions however the Court's final order is worded[.]"

In the middle of November, LeRoux retained new counsel and terminated Connors' representation. On November 15, LeRoux responded through her new counsel to Breer's motion for additional sanctions. In this response, LeRoux asserted that she was not liable for sanctions because she relied on the advice of her attorney as permitted under MCL 700.7817(w). LeRoux also argued that even if she was liable for sanctions, she was only liable in her capacity as trustee

---

[3] The omitted portion of this sentence explained the amount of fees that Breer was requesting, which is not relevant to the issue currently before this Court on appeal.

pursuant to the plain language of the probate court's July 23 order, which did not conflict with the court's subsequent October 15 order.

On November 19, 2019, Breer filed a reply in which she argued that LeRoux's response to the motion for additional sanctions, asserting her reliance on the advice of counsel as a defense, had placed at issue before the probate court the questions whether LeRoux's reliance on that advice was reasonable and whether LeRoux was actually personally at fault such that she could held personally liable for sanctions.

Subsequently, in late November 2019, Breer issued a batch of subpoenas to nonparties that included various corporate entities in Florida related to Walt Disney World Resorts, as well as Connors and other law firms in Florida that apparently had some connection to LeRoux and the trusts.[4] The Disney subpoenas sought evidence related to any Florida hotel reservations and expenses for LeRoux or Connors from October 1, 2013 to the present. The subpoenas to the other law firms sought evidence related to the administration of the trusts, claims and lawsuits pursued and abandoned by the trusts, communications between LeRoux and any of the subpoenaed law firms, and analyses of the strengths and weaknesses of actual and potential claims asserted or assertible on behalf of the trusts or against the trusts or trustee. These subpoenas requested such evidence stretching back to at least 2010. The subpoena to Connors sought information similar to that sought in subpoenas directed to other law firms but also requested evidence of any travel expenses incurred by LeRoux or her counsel for litigation related to these trusts and associated familial and financial disputes.

These subpoenas indicated that they were requested by Wick. The "notice of production from non-party" indicated that Harrell and Wick had issued the subpoenas. The notice was signed by Harrell.

On December 4, 2019, there was a hearing at which the probate court entered stipulated orders providing that the amount of sanctions awarded to Breer against LeRoux and Connors pursuant to the probate court's July 23 and October 15 orders was $86,749.38 and that enforcement of the sanctions orders would be stayed pending appeal if the sum of $95,424.32 was placed in escrow as security.[5] In addressing the stipulated orders on the record, the probate court asked the parties if this resolved the issue whether the sanctions were "to be against Ms. LeRoux individually or just as trustee." Wick responded that in light of the funds being placed in escrow as security, the issue of individual liability for LeRoux "just doesn't matter at this point since we have our judgment satisfied."

On December 6, 2019, LeRoux moved through her new counsel to quash the non-party subpoenas described above. LeRoux argued in relevant part that the subpoenas sought information

---

[4] As this Court noted in its opinion in the previous appeal involving these trusts, there has been litigation involving these trusts and this family in various states, including Florida, that has been pursued in various forms and forums since 2006. *Ross I*, unpub op at 5-6.

[5] The appeal of those sanctions was addressed in *Ross I*, unpub op at 18-20.

that was not relevant to any matter currently pending before the probate court and thus exceeded the scope of permissible discovery. LeRoux further requested sanctions against Breer and her attorneys.

On December 11, 2019, Breer filed an amended motion for additional sanctions requesting that LeRoux be liable for fees in both her individual capacity and as trustee. A status conference was held on the record on December 12, 2019, at which Wick confirmed that the amendment to the motion for additional sanctions consisted of "two words" indicating that Breer was seeking to hold LeRoux liable for the sanctions against her in her individual capacity as well as her capacity as trustee. Wick further stated that the sole purpose of the amendment was to clarify Breer's intent to hold LeRoux personally liable for the sanctions. Wick also argued with respect to the subpoenas LeRoux had moved to quash that

> those subpoenas addressed a number of issues that primarily focused Ms. LeRoux's personal involvement in her counsel's malfeasance in the administration of the trust and they also go to Ms. LeRoux's relationship with Mr. Connors (sp). That discovery is relevant, highly relevant because Ms. LeRoux denies personal liability in this matter and claims to have relied on the advice of counsel, which puts that advice at issue and it also puts at issue Ms. Breer's, uh, reasonable reliance on that advice.
>
> Those issues also overlap with the malpractice claims that when we were last before the court, uh, Ms. LeRoux pledged to pursue. But notwithstanding that pledge and the time sensitive nature of the discovery, Ms. LeRoux is trying to block that discovery entirely.

Wick stated that "we've been seeking personal sanctions throughout this[.]"

On January 14, 2019, the probate court held a hearing on the motion to quash. At this hearing, LeRoux's counsel argued that the subpoenas should be quashed because they did not relate to the only pending motion before the probate court, which was Breer's motion for additional sanctions, and thus exceeded the scope of permissible discovery under MCR 5.131(B)(3). LeRoux's counsel stated that after he filed the motion to quash, Wick sent him a "very angry email" on December 11 indicating that the primary focus of the subpoenas was to obtain discovery to facilitate investigating potential legal malpractice claims against LeRoux's former counsel that could be filed in Florida. LeRoux's counsel provided a copy of this email to the probate court. LeRoux's counsel maintained that the issuance of the subpoenas violated MCR 5.131(B)(3) and was therefore sanctionable under MCR 1.109(E)(6).

Wick admitted on the record at the January 14 hearing that the email was "an accurate description of what was going on at the time." Wick also admitted on the record that the motion for additional sanctions was the only pending motion before the court for purposes of MCR 5.131(B)(3). However, Wick argued that LeRoux claimed in response to the motion for additional sanctions that she had been relying on the advice of counsel and was not personally liable for the sanctions, thereby putting the reasonableness of her administration of the trust and the reasonableness of her reliance on the advice of her counsel at issue. Wick further argued that this justified the issuance of the subpoenas because the information sought would show LeRoux's

personal motivation for litigation was actually to seek revenge against her former mother-in-law (rather than to act in the best interests of the trusts) and whether LeRoux was romantically involved with Connors, which was relevant to showing whether it was reasonable for LeRoux to rely on Connors' advice.

According to Wick, it was necessary to show that LeRoux did something personally wrong in order to hold her individually liable for the sanctions under MCL 700.7910(2). That statute states that a "trustee is personally liable for an obligation arising from ownership or control of the trust estate property or for a tort committed in the course of administration of the trust estate only if the trustee is personally at fault." Wick maintained that the subpoenas he issued were within the scope of MCR 5.131(B)(3) because "the malpractice claims in Florida, the fact that she didn't pursue those is demonstrative of her having ill motive in pursuing the more frivolous claims against our client." Wick conceded that the sum of approximately $96,000 had been escrowed as agreed in the stipulated order entered December 4, and that the issue of LeRoux's personal liability for that sum was no longer an issue. Notably, the discussion between Wick and the probate judge related to the relevance and propriety of the subpoenas at issue spans more than 40 pages of transcript.

As the hearing concluded, the probate court announced its ruling on the record. First, the court granted the motion to quash the subpoenas. In doing so, the probate court found that the only matter currently pending in the probate court, to which the discovery sought by Breer had to be relevant under MCR 5.131(B)(3), was Breer's motion for additional sanctions that pertained to actions by LeRoux and Connors related to the September 2019 trial on the amount of sanctions to be imposed against LeRoux and Connors. The probate court noted that its order granting sanctions to Breer against LeRoux and Connors had specifically stated that the sanctions were against LeRoux in her capacity "as trustee," and the court found that there was accordingly no basis for LeRoux to be held personally liable for the additional sanctions now sought by Breer in connection with the trial on those original sanctions because the issue of LeRoux's personal liability had already been decided. The probate court also found that the December 11 email from Wick to LeRoux's new counsel, as well as the nature of the arguments raised on behalf of Breer in briefing to the court, demonstrated that the primary focus of the subpoenas was not actually directed at any petition or matter pending before the probate court—the only such matter being the motion for additional sanctions—and that the primary focus of the subpoenas was instead the investigation of potential future malpractice claims against Connors. The probate court found that potential future lawsuits against Connors or other persons were unrelated to the motion for additional sanctions pending before the court. The court concluded that the subpoenas were outside the scope of discovery permitted under MCR 5.131(B)(3) for the pending motion for additional sanctions.

Next, the probate court found that "the subpoenas themselves, as well as the pleading in this court attempting to support those subpoenas for reasons outside of the scope of discovery in a Probate Court" violated MCR 1.109(E)(5)(b) for not being "warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law." As a result, the probate court ordered sanctions against Wick and Harrell under MCR 1.109(E)(6).

The court entered an order memorializing its decision to quash the subpoenas and sanction Wick and Harrell jointly and severally in an amount to be determined.

The probate court denied Wick and Harrell's motion for reconsideration of the sanctions ruling. The parties agreed to a stipulated order setting the amount of sanctions to be imposed on Wick and Harrell and preserving Wick and Harrell's right to appeal the probate court's decision to impose sanctions on them. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a lower court's decisions regarding awarding attorney fees, costs, and sanctions for an abuse of discretion. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016); *Kaftan v Kaftan*, 300 Mich App 661, 668; 834 NW2d 657 (2013). "[W]ith respect to an award of attorney fees, we review underlying findings of fact for clear error, while questions of law are reviewed de novo." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008) (citations omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *Pirgu*, 499 Mich at 274.

"Issues of statutory construction present questions of law that this Court reviews de novo." *In re Temple Marital Trust*, 278 Mich App at 128. Under the well-established rules of statutory construction, we enforce unambiguous statutory language as written and may properly look beyond the statutory language if that language is ambiguous. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). "We review interpretation of court rules de novo and under the same principles that govern the construction of statutes." *Dawley v Hall*, 501 Mich 166, 169; 905 NW2d 863 (2018) (quotation marks and citation omitted). "[T]he court rule is to be interpreted according to its plain language, giving each word and phrase its common, ordinary meaning." *Id.* (quotation marks and citation omitted).

## III. ANALYSIS

"The general rule in Michigan is that absent authorization by statute, court rule, or contract, attorney fees are not recoverable." *In re Temple Marital Trust*, 278 Mich App at 129. The issue before this Court is whether the probate court erred in awarding sanctions to LeRoux against Wick and Harrell under MCR 1.109(E)(5) and (6),[6] which provide as follows:

> (5) *Effect of Signature*. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

---

[6] Although portions of MCR 1.109 have been amended since the probate court issued its order sanctioning Wick and Harrell, MCR 1.109(E)(5) and (6) have not been amended.

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) *Sanctions for Violation*. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

Sanctions are warranted under MCR 1.109(E) if a party "asserts claims without any reasonable basis in law or fact for those claims, or where the claims are asserted for an improper purpose." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 707; 950 NW2d 502 (2019). In this case, the probate court concluded that Wicks and Harrell had violated MCR 1.109(E)(5) by issuing subpoenas that exceeded the scope of discovery permitted in probate proceedings under MCR 5.131(B)(3), which provides as follows:

(3) *Scope of Discovery in Probate Proceedings*. Discovery in a probate proceeding is limited to matters raised in any petitions or objections pending before the court.

Although Wick conceded in the probate court that the only pending matter for purposes of MCR 5.131(B)(3) was Breer's motion for additional sanctions, Wick argued that the challenged subpoenas were relevant to that motion because they sought information that would have shown that LeRoux was personally at fault for the sanctionable conduct attributable to her and Connors because LeRoux personally directed Conners' litigation tactics to accomplish the purpose of harassing LeRoux's former mother-in-law (Breer), contrary to LeRoux's claim that the sanctionable conduct was merely the result of her relying on the advice of Connors as her counsel. Wick argued that establishing the above would have allowed Breer to hold LeRoux personally liable for sanctions, in addition to holding her liable in her capacity as trustee, pursuant to MCL 700.7910(2). That statute provides as follows:

A trustee is personally liable for an obligation arising from ownership or control of the trust estate property or for a tort committed in the course of administration of the trust estate only if the trustee is personally at fault. [MCL 700.7910(2).]

Wick argued that the subpoenas were relevant to establishing LeRoux's personal liability for the sanctions sought in the pending motion for additional sanctions and that MCL 700.7910(2) provided legal authority for seeking such personal liability despite the previous order that LeRoux was liable in her capacity as trustee for the sanctions already ordered. Thus, Wick maintained that LeRoux's personal liability was still an issue pending before the probate court. The probate court disagreed, determining that the subpoenas were not relevant to any matter pending before it and quashing the subpoenas.

However, the fact that Wick's argument was ultimately unsuccessful does not mean that it was devoid of arguable legal merit such that it was not based on a "*good-faith argument* for the

extension, modification, or reversal of existing law." MCR 1.109(E)(5)(b) (emphasis added). The court rule explicitly incorporates the concept of good-faith arguments. As the parties conceded at oral argument, and consistent with the findings of our own research, there does not appear to be any Michigan caselaw interpreting the statute on which Wick relied, MCL 700.7910(2). Wick advanced an argument that the subpoenas were justifiable under this statute and contended that the issue of LeRoux's personal liability was a matter before the court as part of the pending motion for additional sanctions due to the nature of the arguments advanced by the parties. The record supports Wick's factual contentions that these matters were in issue, and Wick cited legal authority in support of his position.

Given the lack of caselaw interpreting that provision, it was not sanctionable for Wick to advance a reasonable argument for how it should be understood. The matter of what was before the court and the relevance of the challenged subpoenas was not clear, one way or the other, due in large part to the continuing evolution of the parties' various arguments arising from their demonstrably deep animosity toward each other. As we have already noted, Wick and the probate judge engaged in a discussion of the merits of the subpoena issues that went on for more than 40 pages of transcript. Moreover, at the November 20, 2019 hearing, the probate court granted Wick's request for discovery on the issue of LeRoux's motivations and the reasonableness of her reliance on Connors' advice. The probate court also indicated on the record at the December 12, 2019 status conference that the issue of LeRoux's personal liability had been newly raised such that LeRoux could have additional time in the briefing schedule to respond. Accordingly, it was reasonable for Wick and Harrell to believe that this issue was pending before the probate court.

The mere act of engaging in a contentious legal battle does not give rise to sanctionable conduct. The fact that Wick and Harrell were ultimately unsuccessful in preventing the subpoenas from being quashed does not, without more, justify sanctions being imposed against them under MCR 1.109(E)(5) and (6). See *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002) ("The mere fact that plaintiffs did not ultimately prevail does not render the supplemental complaint frivolous."); *id*; at 663 ("Not every error in legal analysis constitutes a frivolous position."); *Kaftan*, 300 Mich App at 668 ("The trial court did not abuse its discretion by rejecting Carole's request for sanctions. This case was complicated, both legally and factually, and no Michigan case was sufficiently similar to command without question the result we have reached. Though Melvin's arguments ultimately failed, they were not devoid of arguable legal merit."). "It is well established that a lack of clear appellate law can be a basis to bring a claim in good faith." *Fette v Peters Constr Co*, 310 Mich App 535, 551; 871 NW2d 877 (2015). MCR 1.109(E) is intended "to deter attorneys and parties from advancing frivolous legal claims, defenses, and documents, without stifling their good-faith efforts at pursuing novel or arguable legal theories." *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 719; 591 NW2d 676 (1998).[7]

---

[7] In *FMB-First Mich Bank*, 232 Mich App at 719, this Court discussed MCR 2.114(D) and (E), which are substantially similar to the current MCR 1.109(E)(5) and (6). As this Court has previously observed, MCR 2.114 was repealed, effective September 1, 2018, and substantially

Accordingly, the probate court committed an error of law in sanctioning Wick and Harrell under these circumstances.

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. No costs are awarded. MC 7.219.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause

---

relocated to current MCR 1.109(E)." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 693 n 9; 950 NW2d 502, 515 (2019).