*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF JANET KAPP.

---

MILA KAPUSTA,

      Appellant,

v

LORRIE KAPP, also known as LORRIE J. KAPP, also known as JANET LORRAINE KAPP, also known as JANET L. KAPP, Personal Representative, BONNIE PENTA, THOMAS BRENNAN FRASER, and SANDY KAPP,

      Appellees.

UNPUBLISHED
May 26, 2022

No. 357306
Oakland Probate Court
LC No. 2017-380134-DA

---

*In re* ESTATE OF MILAN KAPP.

---

MILA KAPUSTA,

      Appellant,

v

LORRIE KAPP, also known as LORRIE J. KAPP, also known as JANET LORRAINE KAPP, also known as JANET L. KAPP, Personal Representative, BONNIE PENTA, THOMAS BRENNAN FRASER, and SANDY KAPP,

      Appellees.

No. 357308
Oakland Probate Court
LC No. 2018-385916-DA

---

Before: SWARTZLE, P.J., and CAMERON and PATEL, JJ.

-1-

PER CURIAM.

Janet and Milan Kapp had four daughters: Mila Kapusta; Bonnie Penta; Lorrie Kapp (aka Lorrie J. Kapp, Janet Lorraine Kapp, and Janet L. Kapp); and Sandy Kapp. (To avoid confusion, we refer to the various Kapp individuals by their first names.) The sisters divided into two factions before Janet and Milan died, with Kapusta and Penta on one side pitted against Lorrie and Sandy on the other. Kapusta, who is a licensed attorney, was appointed as personal representative of both estates. Kapusta brought a series of lawsuits in her individual capacity and as personal representative of the estates against Lorrie and Thomas Fraser, who was the court-appointed guardian and conservator for Janet and Milan before their deaths. The lawsuits Kapusta pursued as personal representative accrued extensive legal fees, and Kapusta failed to notify Sandy and Lorrie about those fees. Sandy and Lorrie filed petitions for the probate court to remove Kapusta as personal representative of the estates based on the lawsuits she filed as personal representative, the legal fees she accrued, and her failure to notify Sandy and Lorrie about the fees. The probate court granted the petitions and appointed Lorrie as the new personal representative of both estates. Kapusta argues on appeal that the probate court erred by doing so. We affirm.

I. BACKGROUND

The instant appeals reflect an extremely contentious and long-running dispute between the two factions of sisters over the respective guardianships, conservatorships, and estates of their parents. The dispute has encompassed multiple lower court files and more than 20 prior appeals.

Janet and Milan both died in the midst of the ongoing battles over their respective guardianships and conservatorships, and disputes then ensued regarding their respective estates. In particular, Janet died on November 27, 2017, and Milan died on November 6, 2018. A few weeks before Janet's death, Kapusta sued Lorrie alleging statutory and common-law conversion. That complaint was dismissed on procedural grounds, but Kapusta filed another complaint with the same allegations in April 2018. Kapusta and Lorrie reached a global settlement in July 2018 and an order effectuating the order was entered in August 2018; the eventual heirs to both estates consented to the global settlement.

Kapusta was appointed personal representative of both estates on the same day in December 2018. She then filed another lawsuit in her capacity as personal representative against Lorrie in circuit court in 2019. That suit asserted the same claims Kapusta pursued in her individual capacity in the 2018 suit, and the circuit court granted summary disposition to Lorrie on the basis of res judicata. This Court affirmed that decision in *Estate of Janet Kapp v Lorrie Kapp*, unpublished per curiam opinion of the Court of Appeals, issued November 24, 2020 (Docket No. 350675), pp 1-3.

While that appeal was pending, on May 20, 2019, Lorrie filed petitions to remove Kapusta as personal representative of the estates on the basis that Kapusta had abused her authority by filing her 2019 lawsuit against Lorrie in circuit court rather than probate court, in an effort by Kapusta to avoid the probate court and the probate court judge. On October 21, 2019, the probate court denied the 2019 removal petitions, finding that Kapusta's filing of her 2019 lawsuit against Lorrie

in circuit court rather than probate court was not grounds for removing Kapusta as personal representative.

Kapusta filed first annual accounts for both estates on February 11, 2020. Those accounts showed that the estates had hired multiple attorneys and accrued almost $80,000 in attorney fees over the course of the year. Kapusta additionally stated on both accounts that her fiduciary fee was $0. The accounts stated that "written description[s] of the services performed" supporting the legal and fiduciary fees were attached, but no such documents were attached to either account. The accounts additionally showed that Milan's estate had a $3,008 death benefit—the only known asset in either estate—and Kapusta loaned the estates money to cover their legal costs. No documents regarding the loans were attached to the accounts.

On June 25, 2020, Lorrie and Sandy jointly filed petitions to remove Kapusta as personal representative of the estates. Lorrie and Sandy argued that Kapusta had breached her fiduciary duties as personal representative by incurring extensive unauthorized legal fees to pursue meritless lawsuits against Lorrie and Fraser. The petitions focused on deficiencies in Kapusta's first annual accounts as personal representative. Lorrie and Sandy also filed objections to Kapusta's accounts.

On August 27, 2020, Kapusta filed amended first annual accounts for both estates. In her amended accounts, Kapusta removed the attorney fees shown in her original accounts. On the portions of the forms designated to show the fiduciary fees and attorney fees incurred during the accounting period, Kapusta wrote, "TBD," i.e., to be determined. Yet again, Kapusta did not submit any written documentation supporting the attorney and fiduciary fees, even though the accounts stated that a written description of the fees was attached.

An evidentiary hearing on the petitions to remove Kapusta as personal representative was held over four days in May 2021. Kapusta testified at the hearing and admitted that she did not provide Lorrie and Sandy with copies of the written attorney-fee agreements or any notice regarding the anticipated frequency of payment. In fact, the only notice Lorrie and Sandy had of the attorney fees was when Kapusta filed the original first annual accounts. Those accounts showed approximately $80,000 in attorney fees even though the estates had no more than $3,008 in known assets. Kapusta apparently paid these attorney fees herself and, in doing so, loaned the money to the estates. She did not provide any documentation to support those loans. When asked about the fiduciary fees she intended to charge to the estates, Kapusta testified that she had not yet decided whether to charge any fees.

Regarding the lawsuits Kapusta had filed against Lorrie and Fraser, Kapusta testified that her lawsuits were proper because she believed Lorrie stole assets from the estates and that Fraser improperly held funds that Kapusta should have control over as personal representative. Kapusta also admitted that she collected a $50,000 debt from her parents shortly before their deaths. Kapusta confirmed the information in the original first annual accounts and the amended first annual accounts. She claimed that she loaned the estates the money to pay for the approximately $80,000 in attorney fees, but that she was unsure whether she would seek to collect that money from the estates. Kapusta asserted that she wrote "TBD" on the amended accounts because she had not decided whether she would collect that money from the estates. When pressed to give a more definite answer, Kapusta repeatedly stated that she would need to discuss the matter with her attorney.

The probate court made lengthy factual findings at the conclusion of the hearing. The probate court characterized Kapusta's testimony as "evasive and obfuscatory" and did not view her as a credible witness. The probate court then addressed the history of these cases. When discussing the various lawsuits Kapusta filed, the probate court opined that those lawsuits were "clearly for nothing" given the limited assets of the estates. The probate court noted that, although a personal representative is permitted to hire attorneys and prosecute and defend actions involving the estate, this all must be done in good faith, with care, prudence, and impartiality between heirs, and for the best interests of claimants and successors. The probate court found it clear "unequivocally to any unbiased observer that removal of Ms. Kapusta is, in fact, in the best interest of the estate[s]." She repeatedly disobeyed court orders, including the August 2018 settlement order. She had "become incapable of discharging the duties of her office of personal representative in the manner required by the statutes and the court rules. She is completely incapable of doing that [sic] it is obvious now." Kapusta mismanaged the estates and was not acting in the best interests of the estates because she exposed the estates "to all kinds of liability for attorney fees incurred for meritless lawsuits and motions."

The probate court took particular note of Kapusta's testimony that she would was not sure whether she would collect the loans she made to the estates. The probate court found this testimony utterly incredible given that Kapusta had collected a $50,000 debt from her parents while they were still alive.

Turning to the original first annual accounts and the amended accounts, the probate court noted that, in her original accounts, Kapusta claimed to know the exact amounts of attorney fees incurred, and yet in her amended accounts, she wrote "TBD" in the spaces designated for the amount of attorney fees. The probate court noted that "[a]ccounts are supposed to be informative, and to that end amendments to the account normally are made for the purpose of improving the quality of the information provided. In other words, to clarify and increase the accuracy of the information provided." But here, the probate court stated, Kapusta "amended the [a]ccounts to provide less information and to obfuscate and hide information that would directly impact the interested persons['] interest[s]. By doing so Ms. Kapusta and her attorney deprived the interested persons of their rights to object as set forth in the rules and statutes."

The probate court additionally addressed Kapusta's continued refusal to advise the heirs of the potential liabilities of the estates, and her actions in subjecting the estates to so much potential liability through the attorney fees she incurred that, even if the estates were somehow to come into money, "it would all be sucked up by attorney fees." She also exposed the estates to potential liability by filing unwarranted lawsuits. In short, Kapusta "has thoroughly mismanaged the estate[s]." She also failed to perform a duty of the office by not providing required information to her sisters on demand. The probate court concluded, "Bottom line, Ms. Kapusta has breached her fiduciary duties and shown herself to be unsuitable to serve as the personal representative, that she must be removed, and I am removing her." The probate court then appointed Lorrie as personal representative of both estates.

These appeals followed. In Docket No. 357306, Kapusta appeals the order regarding Janet's estate, and in Docket No. 357308, Kapusta appeals the order regarding Milan's estate. Kapusta additionally filed a related appeal in Docket No. 355490. This Court consolidated all three appeals. *In re Kapp Estate*, unpublished order of the Court of Appeals, entered December

14, 2021 (Docket Nos. 355490, 357306, and 357308). We dismissed the appeal in Docket No. 355490 before oral argument, *In re Kapp Estate*, unpublished order of the Court of Appeals, entered April 21, 2022 (Docket No. 355490), because that appeal was based on Kapusta's former status as personal representative and Lorrie—acting as personal representative of the estates—no longer wished to pursue that appeal. Accordingly, only Docket Nos. 357306 and 357308 remain before us.

## II. ANALYSIS

Kapusta argues that the probate court erred by removing her as personal representative of the estates. A probate court's decision whether to remove a personal representative is reviewed for an abuse of discretion. *In re Kramek Estate*, 268 Mich App 565, 576; 710 NW2d 753 (2005). A probate court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). The probate court's factual findings are reviewed for clear error. *Id*.

"The personal representative is a fiduciary of the estate who is charged with settling and distributing the estate." *McTaggart v Lindsey*, 202 Mich App 612, 617; 509 NW2d 881 (1993). As a fiduciary, a personal representative has an obligation to expeditiously settle the estate while also protecting the interests of interested persons. See MCL 700.1212(1); MCL 700.3703(1); MCL 700.7803.

"An interested person may petition for removal of a personal representative for cause at any time." MCL 700.3611(1). An "interested person" is defined to include, *inter alia*, "an heir, devisee, child, spouse, creditor, and beneficiary and any other person that has a property right in or claim against a trust estate or the estate of a decedent, ward, or protected individual." MCL 700.1105(c). Lorrie and Sandy, who filed the petitions for Kapusta's removal, are heirs and beneficiaries under the wills of Milan and Janet. Lorrie and Sandy thus qualify as interested persons who could petition for the removal of Kapusta as personal representative of the estates.

MCL 700.3611(2) sets forth the circumstances in which the probate court may remove a personal representative:

(2) The court may remove a personal representative under any of the following circumstances:

(a) Removal is in the best interests of the estate.

(b) It is shown that the personal representative or the person who sought the personal representative's appointment intentionally misrepresented material facts in a proceeding leading to the appointment.

(c) The personal representative did any of the following:

(*i*) Disregarded a court order.

(*ii*) Became incapable of discharging the duties of office.

-5-

(*iii*) Mismanaged the estate.

(*iv*) Failed to perform a duty pertaining to the office.

MCR 5.313, which addresses attorney compensation, is also relevant to this case. MCR 5.313(A) provides, in relevant part, "An attorney is entitled to receive reasonable compensation for legal services rendered on behalf of a personal representative, and to reimbursement for costs incurred in rendering those services." MCR 5.313(A) further provides, "The court may also take into account the failure to comply with this rule." MCR 5.313(B) states: "At the commencement of the representation, the attorney and the personal representative or the proposed personal representative must enter into a written fee agreement signed by them. A copy of the agreement must be provided to the personal representative." MCR 5.313(C) states,

Regardless of the fee agreement, every attorney who represents a personal representative must maintain time records for services that must reflect the following information: the identity of the person performing the services, the date the services are performed, the amount of time expended in performing the services, and a brief description of the services.

MCR 5.313(D) provides:

Within 14 days after the appointment of a personal representative or the retention of an attorney by a personal representative, whichever is later, the personal representative must serve on the interested persons whose interests will be affected by the payment of attorney fees, a notice on a form approved by the State Court Administrator and a copy of the written fee agreement. The notice must state:

(1) the anticipated frequency of payment,

(2) that the person is entitled to a copy of each statement for services or costs upon request,

(3) that the person may object to the fees at any time prior to the allowance of fees by the court,

(4) that an objection may be made in writing or at a hearing and that a written objection must be filed with the court and a copy served on the personal representative or attorney.

Finally, MCR 5.313(E) states:

A personal representative may make, and an attorney may accept, payments for services and costs, on a periodic basis without prior court approval if prior to the time of payment

(1) the attorney and personal representative have entered a written fee agreement;

(2) copies of the fee agreement and the notice required by subrule (D) have been sent to all interested persons who are affected;

(3) a statement for services and costs (containing the information required by subrule (C)) has been sent to the personal representative and each interested person who has requested a copy of such statement; and

(4) no written, unresolved objection to the fees, current or past, has been served on the attorney and personal representative.

In all other instances, attorney fees must be approved by the court prior to payment. Costs may be paid without prior court approval. Attorney fees and costs paid without prior court approval remain subject to review by the court.

The probate court found that removal was warranted on multiple grounds under MCL 700.3611(2). The probate court stated that Kapusta had disregarded the August 2018 settlement order by again suing Lorrie on the same claims that had already been settled. Also, there was ample evidence that, as a result of unresolvable bias against her sisters and others, Kapusta was unable to fulfill her duties as personal representative. She failed to perform a duty pertaining to the office because she failed to give an accurate report of her accountings and failed to comply with the requirements of MCR 5.313. She also mismanaged the estates, given the exorbitant amount of attorney fees incurred. That is, Kapusta had caused the estates to sustain substantial debt and liabilities in the form of attorney fees incurred in pursuing lawsuits that were "clearly for nothing."

The probate court's findings were not clearly erroneous. The evidence showed that Kapusta failed to perform duties pertaining to the office of personal representative. Kapusta retained multiple attorneys to provide legal services for the estates, including to pursue the lawsuits that Kapusta filed as personal representative against Lorrie and Fraser. Kapusta failed to comply with the requirements of MCR 5.313 in multiple respects. In violation of MCR 5.313(D), Kapusta did not provide Lorrie and Sandy with copies of the written attorney-fee agreements or the mandatory written notice. Kapusta and her attorneys also violated MCR 5.313(E) by, respectively, making and accepting attorney fee payments without prior court approval and without providing copies of the written fee agreements and the notice required by MCR 5.313(D) to all interested persons. By violating these provisions, Kapusta thwarted the ability of Lorrie and Sandy to object to the attorney fees, which amounted to almost $80,000 for the two estates combined during the first accounting period, even though the estates collectively had no more than $3,008 available in known assets.

Kapusta has suggested that the interests of Lorrie and Sandy were not affected by the attorney-fee payments because Kapusta used her own resources to pay the attorney fees. The probate court provided a thorough and persuasive explanation for why it found Kapusta's argument on this point to be unavailing. While testifying at the evidentiary hearing, Kapusta refused to waive any claims against the estates for reimbursement for the attorney fee payments. She declined to state if she would seek to recover attorney fee payments from the estates, saying she would need to consult her attorney on the matter (even though Kapusta herself is an experienced attorney). The probate court reasonably expressed skepticism that Kapusta would be hesitant about collecting

the attorney fees from her parents' estates; the probate court noted that, while her parents were alive, Kapusta collected on a $50,000 debt from her parents. Accordingly, the probate court properly declined to credit Kapusta's argument that Lorrie and Sandy were not affected by the substantial attorney fees that Kapusta incurred as personal representative. Kapusta's suggestion that she did not violate MCR 5.313 lacks merit.

Also, Kapusta's accountings as personal representative were deficient. MCL 700.3703(4) provides:

> The personal representative shall keep each presumptive distributee informed of the estate settlement. Until a beneficiary's share is fully distributed, the personal representative shall annually, and upon completion of the estate settlement, account to each beneficiary by supplying a statement of the activities of the estate and of the personal representative, specifying all receipts and disbursements and identifying property belonging to the estate.

See also MCR 5.310(C)(2)(c). The probate court correctly noted that, in her original first annual accounts, Kapusta claimed to know the exact amounts of attorney fees incurred, and yet in her amended first annual accounts, she wrote "TBD" in the spaces designated for the amount of attorney fees. Although the account forms stated that a written description of the legal services performed was attached, Kapusta failed to attach any such written description to any accounts that she filed. The probate court concluded from the evidence that Kapusta knew the amounts of attorney fees incurred but falsely claimed in her amended accounts that she did not know the amounts. Kapusta has failed to establish clear error in regard to these findings.

Also, Kapusta's original accounts listed $0 for fiduciary fees, but the amended accounts stated that the fiduciary fees were "TBD." Kapusta failed to attach a written description of the fiduciary services performed, even though language on the account forms stated that such a written description was attached. At the evidentiary hearing on the removal petitions, Kapusta testified that she had provided fiduciary services but had not yet decided whether to charge a fiduciary fee.

Nor did the probate court clearly err in finding that Kapusta had mismanaged the estates. MCL 700.1508 provides, "In investing and managing fiduciary assets, *a fiduciary may only incur costs that are appropriate and reasonable in relation to the assets*, the purposes of the fiduciary estate, and the skills of the fiduciary." (Emphasis added.) Kapusta incurred exorbitant attorney fees to pursue unwarranted lawsuits even though the estates had little or no money to pay for those attorney fees. Kapusta's contention that she paid the attorney fees out of her own funds ignores her testimony at the evidentiary hearing in which she repeatedly refused to rule out any claim for reimbursement against the estates. In short, Kapusta exposed the estates to extensive liabilities that they could not afford.

The probate court also found that Kapusta disregarded the August 2018 settlement order. The probate court correctly observed that, following the global settlement, Kapusta filed a lawsuit in circuit court against Lorrie in 2019 asserting the same claims that Kapusta had pursued in a 2018 lawsuit that was resolved as part of the global settlement. This Court affirmed the circuit court's grant of summary disposition to Lorrie in the 2019 case on the basis of res judicata. *Kapp*,

unpub op at 1-3. Given this procedural history, the probate court did not clearly err in finding that Kapusta disregarded the August 2018 settlement order by filing the 2019 action against Lorrie.

Overall, the probate court did not clearly err in its findings. Its decision to remove Kapusta as personal representative fell within the range of reasonable and principled outcomes.

Kapusta next argues that res judicata barred the removal petitions filed in 2020 that led to her removal because Lorrie had filed earlier removal petitions in 2019 that the probate court denied. This Court has explained:

> The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation. For res judicata to preclude a claim, three elements must be satisfied: (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. The burden of proving the applicability of the doctrine of res judicata is on the party asserting it. [*Garrett*, 314 Mich App at 441 (cleaned up).]

The 2020 petitions were based on developments that occurred after the denial of the 2019 removal petitions. In particular, the 2020 removal petitions focused primarily on arguments pertaining to Kapusta's accounts that she filed on February 11, 2020. The accounts reflected the amounts of attorney fees that Kapusta had incurred and her claim to have loaned the estates money to pay the attorney fees. After the filing of the 2020 removal petitions, other developments occurred that were relevant to the removal issues, including Kapusta's filing of her amended accounts and this Court's issuance of *Kapp*, unpub op at 1-3, affirming the dismissal of Kapusta's 2019 lawsuit against Lorrie.

In short, resolution of the 2020 removal petitions hinged on developments that occurred after the denial of the 2019 removal petitions. Hence, the issues involved in the 2020 removal petitions were not, and could not have been, resolved in the litigation of the 2019 removal petitions. Kapusta has thus failed to satisfy the third element of res judicata, and the doctrine of res judicata is inapplicable.

Finally, Kapusta raises a rash of minor issues, none of which warrant reversal. She asserts that the probate court improperly removed her on the basis of findings regarding acts that preceded her appointment as personal representative. As summarized earlier, the probate court's decision to remove Kapusta was based on her acts and omissions as personal representative, including her deficient accountings and her failure to provide required information to Lorrie and Sandy. To the extent that the probate court summarized or discussed the long history of this matter, it was to provide useful context regarding the issues pertinent to the decision whether to remove Kapusta. For example, the probate court considered Kapusta's collection of a $50,000 debt from her parents in the context of evaluating her credibility in suggesting that she might not collect on her loans to her parents' estates.

Kapusta also argues that a personal representative is permitted to pay attorney fees when funds are not available in the estates. This argument reflects a lack of understanding of the probate

court's decision. Merely loaning money to the estates to pay attorney fees was not by itself the reason for Kapusta's removal. As explained, Kapusta failed to provide required information to Lorrie and Sandy regarding the attorney fees incurred, she refused to rule out seeking reimbursement from the estates, Kapusta's accountings were grossly deficient, and she mismanaged the estates by incurring exorbitant attorney fees in relation to the values of the estates. Kapusta's appellate argument amounts to a diversion that fails to grapple with the true bases of the probate court's decision, thus abandoning any claim to relief on appeal on that basis. *Seifeddine v Jaber*, 327 Mich App 514, 522; 934 NW2d 64 (2019).

The same point applies in regard to Kapusta's argument that her amended accounts superseded her original accounts. According to Kapusta, the probate court improperly removed her on the basis of the original accounts, which Kapusta views as moot following the filing of the amended accounts. This argument is a distraction that provides no basis to question the probate court's decision. Whether the amended accounts superseded the original accounts is beside the point; what matters is what the information contained in the accounts reveals about Kapusta's performance as personal representative.

## III. CONCLUSION

For the reasons stated in this opinion we affirm the probate court's orders removing Kapusta as personal representative and appointing Lorrie in her stead in Docket Nos. 357306 and 357308. Lorrie and Fraser, as the prevailing parties, may tax costs under MCR 7.219.

/s/ Brock A. Swartzle
/s/ Thomas C. Cameron
/s/ Sima G. Patel

-10-